Argued and submitted February 28, 2012, in A143046, reversed and remanded; in A143045, affirmed March 6, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL RAY PLEW,
*Defendant-Appellant.*

Curry County Circuit Court
09CR0242, 09CR0319;
A143045 (Control), A143046

298 P3d 45

Meredith Allen, Senior Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General. With her on the supplemental brief were John

R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Edmonds, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

In these consolidated cases, defendant was convicted of two counts of burglary in the first degree, ORS 164.225. The first case (the Holly Lane case) concerns the burglary of a house on Holly Lane on March 18, 2009. The second case (the Benham Lane case) concerns the burglary of a house on Benham Lane on March 26, 2009. Defendant appeals both judgments and assigns error to the trial court's denial of his motion to suppress statements that he made to police regarding the Holly Lane case, contending that they were the result of police interrogation that violated his right to counsel under Article I, section 11, of the Oregon Constitution.[1] Specifically, defendant asserts that, because he had requested and obtained counsel in the Benham Lane case, police could not question him regarding the Holly Lane case—in his view, a factually related criminal episode—without first notifying his attorney. We agree and, therefore, reverse defendant's conviction in the Holly Lane case and remand for a new trial.[2]

We review the denial of a motion to suppress for legal error and defer to the trial court's findings of historical fact if there is sufficient evidence to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). On March 26, 2009, Curry County police received an eyewitness report identifying defendant in connection with a burglary of a house on Benham Lane. Sheriff's Deputy McAllister contacted defendant at his residence and arrested him for burglary. That same day, McAllister took photographs of the interior of defendant's apartment and seized items that he believed to be stolen. At that time, McAllister was not aware of the burglary involving the house on Holly Lane.

The next morning, defendant was arraigned and requested counsel in the Benham Lane case. The court

---

[1] Defendant only challenges his conviction in the Holly Lane case, and he does not contend that reversal of that conviction requires resentencing in the Benham Lane case. Accordingly, defendant's conviction and sentence in the Benham Lane case are not at issue on appeal.

[2] Defendant also argues that his statements should have been suppressed because his low IQ and inability to understand "complex factual matters" rendered him incapable of voluntarily waiving his *Miranda* rights. We need not reach that argument given our disposition of the case.

directed that defendant's attorney be selected from a local consortium of defense attorneys. That afternoon, McAllister interviewed a second suspect, Herzog. Herzog told McAllister that he and defendant had participated in two burglaries: one involving the house on Benham Lane and another involving a house on Holly Lane. The two houses are located in the same neighborhood and are approximately one mile apart.

Shortly after interviewing Herzog, McAllister arranged an interview with defendant. McAllister knew that defendant had appeared in court and that the court had appointed counsel in connection with the Benham Lane case, but he did not determine the identity of defendant's attorney and invite that attorney to the interview. Prior to the interview, McAllister gave defendant *Miranda* warnings, and defendant indicated that he understood them. Defendant testified that he expected his attorney to be at the interview "because I asked for counsel when I was in court, and I thought my attorney would be representing me on everything that I came to." After explaining that he was not there to discuss the Benham Lane case, McAllister questioned defendant about the burglary on Holly Lane. In doing so, McAllister used the photographs of defendant's apartment—taken the day before in connection with the Benham Lane investigation—to question defendant regarding specific items of property visible in the photographs.[3] Defendant admitted to his involvement in the Holly Lane burglary and identified property in the photographs that he had stolen from that house and stored in his apartment. Moreover, in response to a question from McAllister asking whether there was "anything else that we need to know about," defendant responded, "No. That's the only two places, I swear to you. You can even give me a lie detector and it will come up positive that's the only two houses[.]" Defendant was subsequently charged with first-degree burglary of the Holly Lane residence.

Before trial, defendant moved to suppress the statements that he made to McAllister concerning the Holly

---

[3] McAllister testified that he did not ask defendant about any property that had been stolen from the house on Benham Lane.

Lane case. At the suppression hearing, defendant argued that, because he had requested counsel in the Benham Lane case, McAllister was required, under Article I, section 11, to notify defendant's attorney before interviewing defendant regarding a factually related criminal episode. Defendant argued:

> "I submit that these two burglaries are not separate like a DUII and a murder. These two burglaries are in the same neighborhood. These two burglaries, the elements are all the same. They happened in close proximity.
>
> "The officer is investigating these two burglaries at the same time. He actually talks to my client * * * about what was in his bedroom."

The trial court denied defendant's motion to suppress, concluding that the burglaries were factually unrelated and, therefore, that no right to counsel had attached. Following a stipulated facts trial, the court found defendant guilty of two counts of first-degree burglary: one for the burglary on Benham Lane and one for the burglary on Holly Lane.

On appeal, defendant reiterates his argument that the two burglaries were factually related and that, accordingly, McAllister violated defendant's Article I, section 11, right to counsel when he interviewed defendant without first notifying defendant's attorney in the Benham Lane case. The state responds that the two burglaries were factually unrelated and that, accordingly, the trial court correctly denied defendant's motion to suppress.

Article I, section 11, provides, among other things, that a criminal defendant has the right "[i]n all criminal prosecutions * * * to be heard by himself and counsel." Accordingly, "once a person is charged with a crime[,] he or she is entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant." *State v. Sparklin*, 296 Or 85, 93, 672 P2d 1182 (1983). "Ordinarily, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend." *State v.*

*Gilmore*, 350 Or 380, 385, 256 P3d 95 (2011) (internal quotation marks omitted). That prohibition, however, does not apply "to the investigation of *factually unrelated* criminal episodes." *Id.* (internal quotation marks omitted; emphasis added). Thus, the issue presented on appeal is whether the Benham Lane and Holly Lane burglaries were "factually unrelated."

Defendant contends that this case is materially indistinguishable from *State v. Potter*, 245 Or App 1, 260 P3d 815 (2011), *rev den*, 351 Or 586 (2012), which we decided after the court's ruling on defendant's motion to suppress. In that case, the defendant was arraigned on an identity theft charge involving his attempt to cash a fraudulent check drawn on the account of Atlantic & Pacific Freightways (APF), and counsel was appointed. *Id.* at 3. About two weeks later, the defendant's brother was arrested after returning to a bank where he had earlier attempted to cash a fraudulent check drawn on the account of BTS Container Services (BTS). *Id.* at 3-4. The defendant's brother told a detective, Malanaphy, that the defendant had created the BTS check. *Id.* at 4. Malanaphy then contacted another detective, Glass, who was assigned to the defendant's case involving the APF check. *Id.* at 3-4. Glass provided Malanaphy with information regarding additional counterfeit BTS checks. *Id.* at 4. The next day, the two detectives went to the defendant's house and interviewed his wife about possible accomplices. Malanaphy returned on March 28 to interview the defendant, who had recently been released from jail. After giving the defendant *Miranda* warnings, Malanaphy questioned the defendant about the fraudulent BTS checks. Although Malanaphy did not specifically question the defendant regarding the APF charge on which the defendant had been appointed counsel, he did encourage the defendant to reveal the names of his accomplices. The defendant then made incriminating statements. *Id.*

The defendant was subsequently charged with multiple counts of identity theft related to the BTS checks. *Id.* at 3. Prior to the consolidated trial, the defendant moved to suppress the statements that he had made to Malanaphy on March 28, arguing that Malanaphy was required to notify

his attorney in the APF case before questioning him on a factually related matter. *Id.* at 4. The trial court denied the defendant's motion, and the defendant was convicted of identity theft in both cases. *Id.* at 5. The defendant appealed, reiterating his argument before the trial court. *Id.*

On appeal, we concluded that the criminal episodes were factually related for purposes of Article I, section 11. *Id.* at 10. In doing so, we rejected the state's argument that the matters were factually unrelated because the physical evidence (the checks) was not identical and the cases had different victims. We noted that, although those things were true, "a number of countervailing factors preponderate in favor of the conclusion that the two matters were factually related." *Id.* We concluded:

"First, two detectives from different precincts in the same jurisdiction—Malanaphy and Glass—were investigating remarkably similar crimes, perpetrated within close temporal proximity, and involving the same suspect—defendant. Malanaphy contacted Glass because he learned about her investigation of charges that were similar to the crimes he was investigating. Glass, in turn, was able to provide Malanaphy with specific information about two additional counterfeit checks relating to his case. The detectives believed that the crimes were perpetrated by defendant using a home computer to create false checks. Both detectives went to defendant's home together to question his wife about defendant's accomplices. In short, they were working together to glean evidence relating to defendant, defendant's computer, and defendant's accomplices that might be relevant to either or both of their cases. Finally, although his specific questions related to the [BTS] case, not the [APF] case that Glass was investigating, Malanaphy encouraged defendant to reveal information about other crimes beyond the ones committed in the [BTS] case. Indeed, in response to Malanaphy's questioning, defendant made admissions about using a computer to create fraudulent checks that were relevant to, and were used against him in, both of these consolidated cases.

"*In sum, the crimes in the consolidated cases were remarkably similar, involved overlapping evidence, and were committed in the same jurisdiction within close temporal proximity to each other, and the detectives investigating*

> *both sets of crimes were working collaboratively.* In such circumstances, and where defendant had been charged in one of the cases and counsel had been appointed for him in that case, defendant was 'entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant.' *Sparklin*, 296 Or at 93."

*Id.* at 10-11 (emphasis added).

Here, we agree with defendant that the two burglaries were sufficiently factually related so that defendant was entitled, under Article I, section 11, to the benefit of his attorney's advice regarding the investigation of the Holly Lane burglary. The burglaries were allegedly committed by the same two suspects, defendant and Herzog, within close temporal proximity, and at houses located in the same neighborhood. Herzog confessed to, and implicated defendant in, both crimes. Further, the same detective investigated both cases, and he used photographs taken during his investigation of the Benham Lane case to question defendant regarding defendant's possession of stolen property connected to the Holly Lane case. Importantly, those photographs—depicting various pieces of stolen property stored in defendant's apartment—constituted overlapping evidence of defendant's involvement in both crimes. Defendant thought that the two matters were related, expecting his attorney on the Benham Lane case to be present during the interrogation about the Holly Lane burglary. Finally, although McAllister did not ask defendant specific questions about the Benham Lane case, he did ask defendant if there was "anything else that we need to know about." Defendant referenced the Benham Lane case in his response: "No. That's the only two places, I swear to you. You can even give me a lie detector and it will come up positive that's the only two houses[.]" As in *Potter*, defendant made an admission that was relevant to both cases.

The state acknowledges that, "[t]o be sure, some of [the factors from *Potter*] are present here," but argues that the present case is distinguishable from *Potter* because it involves "two *distinct* burglaries that defendant committed

*eight days apart* \* \* \*. The crimes therefore were part of two different criminal episodes, unlike in *Potter*, where [the] defendant's acts in creating fraudulent checks on his computer may well have occurred at or near the same time." (Emphases added.) We disagree. *Potter*, like this case, involved distinct crimes: in that case, the defendant was suspected of creating multiple fraudulent checks that were drawn on two different accounts, and attempting to cash one of them. Moreover, contrary to the state's assertion, our decision in *Potter* was not predicated on the notion that the "defendant's acts in creating fraudulent checks on his computer may well have occurred at or near the same time." Rather, we noted, as one of *many* considerations, that the defendant's alleged crimes were committed "within close temporal proximity." *Id.* at 11. Here, we conclude that the alleged crimes were committed within close temporal proximity. That, in addition to the fact that the crimes "were remarkably similar," "involved overlapping evidence," "were committed in the same jurisdiction," and were investigated by the same detective, supports our conclusion that the two burglaries are factually related. *Id.*

In sum, we conclude that the two burglaries are factually related and that, therefore, McAllister violated defendant's Article I, section 11, right to counsel when he interviewed defendant without first notifying defendant's attorney. Accordingly, the trial court erred in denying defendant's motion to suppress.

In A143046, reversed and remanded; in A143045, affirmed.