Argued and submitted March 16, 2015; convictions on Counts 1 and 2 reversed and remanded; convictions on Counts 8, 9, and 10 reversed; remanded for resentencing; otherwise affirmed April 20, 2016

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JAVIER BELTRAN-SOLAS,
aka Javier Salas Beltran,
*Defendant-Appellant.*

Marion County Circuit Court
13C40406; A154540

372 P3d 577

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Rebecca M. Auten, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

LAGESEN, J.

**LAGESEN, J.**

Defendant was convicted in a bench trial of, among other things, three counts of being a felon in possession of a firearm, ORS 166.270, and three counts of endangering the welfare of a minor, ORS 163.575. On appeal, he argues that the trial court erred by denying his motion to suppress evidence of rifles on which two of the felon-in-possession charges, Counts 1 and 2, were founded. He also contends that the trial court erred by denying his motion for judgment of acquittal on all three charges of endangering the welfare of a minor, Counts 8, 9, and 10. We conclude that the trial court erred in both respects.

The charges against defendant arose after police obtained and executed a search warrant for the house in which defendant lived with his extended family. Officers obtained a warrant after receiving information that there was a methamphetamine lab operating in the house; the warrant authorized them to search for methamphetamine and other illegal controlled substances, methamphetamine distribution equipment, "illegally obtained proceeds," and a wide range of records, but did not authorize officers to search for weapons. Although the probable cause affidavit identified members of defendant's extended family as being potentially involved in offenses relating to controlled substances and endangering minors, defendant himself was not identified in the affidavit.

When officers arrived to execute the warrant, defendant, his wife Martha, defendant's three adult children, two other adult males, and three minor children were escorted from the residence. At least two of the minor children had been placed in Martha's custody by the Department of Human Services. One of defendant's adult children was the parent of the other minor child.

At the time the warrant was executed, defendant had been charged with menacing for allegedly threatening neighbors with a shotgun, and had been appointed counsel in connection with that charge. When the police had responded to investigate defendant's alleged menacing, they

were unable to locate the gun that defendant reportedly used.

While searching defendant's bedroom pursuant to the warrant, officers found a handgun. They relayed that information to Detective Carney, who was interviewing defendant. Aware of the menacing incident and the fact that the gun involved had not been located, Carney then asked about the previous incident "with a shotgun that had been investigated earlier." In response, defendant stated that he had used a "toy gun" in the prior incident. Carney then told defendant that a gun had been found inside the residence, and asked whether additional weapons would be found within the residence. Defendant responded that there were two rifles hidden in the attic. Officers located the guns where defendant said that they would be.

Although the search did not uncover a methamphetamine lab, in addition to the guns, the search uncovered heroin, methamphetamine, and various drug paraphernalia. As noted, defendant was charged with three counts of felon in possession of a firearm (based on the three guns found during the search of defendant's house), three counts of endangering the welfare of a minor, and several controlled substances offenses.

Before trial, defendant moved to suppress the evidence of the firearms found in the attic. He did so on the basis that, by questioning him about the prior menacing incident while defendant had appointed counsel, Carney violated defendant's right to counsel under Article I, section 11, of the Oregon Constitution as that right has been explained in *State v. Sparklin*, 296 Or 85, 672 P2d 1182 (1983), and *State v. Staunton*, 79 Or App 332, 718 P2d 1379 (1986). The trial court denied the motion.

At trial, defendant moved for a judgment of acquittal on the three charges of endangering the welfare of a minor, arguing that the evidence was insufficient to permit a rational factfinder to find that defendant had violated the child endangerment statute, ORS 163.575, under the interpretation of that statute adopted by the Supreme Court in *State v. McBride*, 352 Or 159, 281 P3d 605 (2012). The trial court denied the motion.

## MOTION TO SUPPRESS

We first address defendant's contention that the trial court erred in denying the motion to suppress evidence of the firearms. We review that denial for legal error and are bound by the trial court's findings of historical facts that are supported by constitutionally sufficient evidence in the record. *State v. Bailey*, 356 Or 486, 489, 338 P3d 702 (2014).

Defendant's theory of suppression is that (1) defendant had a right to counsel under Article I, section 11, and was in fact represented by counsel, in connection with the menacing charge; (2) by questioning defendant about that menacing charge, Carney violated defendant's Article I, section 11, right to counsel; and (3) the discovery of the firearms in the attic derived directly from that illegal questioning and, for that reason, evidence of those firearms must be suppressed. In support of that argument, defendant relies on *Sparklin*, and a line of cases adhering to it. Under *Sparklin*, "Once an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged, unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend." 296 Or at 93. As the Supreme Court recently explained, the *Sparklin* rule applies to any interrogation in which "it is reasonably foreseeable to a person in the position of the questioner that questioning will elicit incriminating information involving the charged offense for which the defendant has obtained counsel." *State v. Prieto-Rubio*, 359 Or 16, 37, 376 P3d 255 (2016). That is so, even if the interrogation ostensibly is about a different, uncharged offense. *Id.* at 36 ("It would seem to follow from *Sparklin* that, to the extent that questioning about uncharged offenses may foreseeably lead to *** incriminating information about the charged offense, it is foreclosed by the state constitutional right to counsel."). If a defendant is interrogated in violation of the *Sparklin* rule, then any evidence discovered as result of that unlawful interrogation—including evidence of other crimes—must be suppressed unless the state demonstrates that the evidence was "obtained by means separate from the" unlawful interrogation. *Staunton*, 79 Or App at 339.

In response, the state does not dispute that Carney violated defendant's rights under Article I, section 11, by questioning defendant about the prior incident, and concedes that defendant's statement about using a "toy gun" could not be used in evidence against defendant. However, the state argues that Carney's subsequent confrontation of defendant with the fact that officers had found a gun in the house, and his question about the presence of additional guns, was independent of the unlawful interrogation and was, therefore, a permissible interrogation about an offense that was not "factually related" to the menacing.

It is not clear that the state's "factually related" argument, which the state advanced before the Supreme Court's decision in *Prieto-Rubio*, survives that decision, which, as noted, clarified that the relevant question is whether, as an objective matter, it is reasonably foreseeable that an interrogation will elicit incriminating information about a charged offense for which a defendant has counsel. 359 Or at 36-37. Beyond that, however, the real problem for the state is that the record provides no basis for concluding that Carney's follow-up questions to defendant were not part of the same concededly unlawful interrogation that Carney commenced regarding the menacing charge. When defendant denied using a real gun in the menacing incident by telling Carney that he had used a toy gun, Carney responded by confronting defendant with the fact that a gun had been found in the house, and asking defendant if there were more guns, thereby eliciting defendant's admission that there were—an admission that then led to the discovery of the additional weapons. As an objective matter, Carney's questioning of defendant cannot be parsed in the way that the state would like us to do. Although we recognize, as the trial court appears to have found, that Carney subjectively intended his questions about the firearms to be independent from his question about the menacing incident, by initiating that line of questioning by asking about the menacing charge, Carney linked the two investigations. Although it may have been possible for Carney to have questioned defendant about the handgun found in his house in a way that did not violate defendant's right to counsel under Article I, section 11, Carney's decision to connect the current investigation

explicitly to the prior charge means that Carney did not do so here.

Thus, Carney's questioning of defendant about the prior menacing charge—including the questions that led to defendant's admissions about the additional guns—violated defendant's right to counsel under Article I, section 11. As a result, defendant's admissions that there were guns in his attic should have been suppressed. Because the state did not demonstrate that it would have obtained the guns absent defendant's admissions—as noted, the warrant did not authorize officers to search for weapons and the state does not suggest that officers otherwise would have found those two guns—evidence that officers found them in defendant's attic should also have been suppressed. As that evidence likely played a role in defendant's convictions on Count 1 and Count 2, we must reverse and remand with respect to those two convictions. Defendant does not suggest that the error affected the remaining convictions and, in any event, we are persuaded that the error was harmless as to those convictions.

## MOTION FOR JUDGMENT OF ACQUITTAL

Defendant also assigns error to the trial court's denial of his motion for judgment of acquittal on the three counts of endangering the welfare of a minor, in violation of ORS 163.575. Defendant was charged with violating that statute by knowingly "permit[ting] a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted." ORS 165.575(1)(b). Defendant points out that in *McBride*, the Supreme Court held that to prove that a defendant "permit[ted]" a minor to enter or remain in a place where unlawful activity involving controlled substances is conducted, "the state must demonstrate that defendant engaged in some affirmative conduct authorizing or otherwise making it possible for the minors to enter or remain" in the place at issue. 352 Or at 168. Defendant contends that the record is devoid of any evidence of such "affirmative conduct" in this case.

We review the denial of a motion for a judgment of acquittal "by examining the evidence in the light most

favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). Here, we agree with defendant that, under *McBride*, the evidence is insufficient to permit a reasonable factfinder to find beyond a reasonable doubt that defendant "permitted" the minors who were found in the house to enter or remain there. The record contains no evidence that defendant—as opposed to any of the other adults living in the house—had authorized the children to be in the house, or even that defendant had the authority to make that decision within the structure of the extended family that was occupying the house. The record contains very little evidence about the family's living arrangements, or day-to-day life, apart from the fact that they all lived in the same house. The record does not disclose which of the adults owned or rented the house, and the water and electric bills were in Martha's name, not in defendant's name, which suggests that defendant may not have been a person who had control over the house. Beyond that, there is no evidence that defendant had legal custody of any of the minors; the evidence is affirmatively to the contrary. Finally, the record contains no evidence of any other affirmative conduct by defendant that could be said to have authorized the minors to enter or remain in the house.

Below and on appeal, the state points to evidence in the record of a large, framed collection of family photographs that was hanging on the wall in the living room of the house. In the center of that collection of photographs is a photograph of defendant. The state argues that a rational factfinder could infer from that photo arrangement that defendant was the "patriarch" of the family "who thus had control over the family." We think that suggested inference is too speculative.

Convictions on Counts 1 and 2 reversed and remanded; convictions on Counts 8, 9, and 10 reversed; remanded for resentencing; otherwise affirmed.