**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**YEVGENIY PAVLOVICH SAVINSKIY,**
*Defendant-Appellant.*

Clatsop County Circuit Court
121059; A154791

399 P3d 1075

Peter Gartlan, Chief Defender, and Eric Johansen, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant. On the supplemental brief were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Eric Johansen, Deputy Public Defender.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the answering brief for respondent. On the supplemental briefs were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Doug M. Petrina, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

**SHORR, J.**

Defendant appeals a judgment of conviction for: two counts of attempted murder (Counts 1 and 2), ORS 161.405(2)(a); one count of fleeing or attempting to elude a police officer while in a motor vehicle (Count 5), ORS 811.540(1); one count of identity theft (Count 6), ORS 165.800; one count of attempted possession of a silencer (Count 7), ORS 161.405(2)(c); five counts of recklessly endangering another person (Counts 9 to 13), ORS 163.195; two counts of conspiracy to commit murder (Counts 17 and 18), ORS 161.450(2)(a); and one count of conspiracy to commit assault in the first degree (Count 19), ORS 161.450(2)(a). We initially affirmed the trial court without opinion. *State v. Savinskiy*, 272 Or App 664, 358 P3d 1008 (2015), *vac'd and rem'd*, 359 Or 847, 838 P3d 847 (2016). Defendant petitioned for review, and the Supreme Court vacated our decision and remanded the case to us for reconsideration in light of *State v. Prieto-Rubio*, 359 Or 16, 376 P3d 255 (2016).

On remand, we are asked to consider anew whether the trial court erred when it partially denied defendant's motion to suppress. When denying the motion to suppress in part, the trial court concluded that the state did not violate defendant's right to counsel under Article I, section 11, of the Oregon Constitution when defendant's cellmate, who was acting on behalf of the state and without notice to defendant's counsel, asked defendant about his involvement in new potential conspiracy crimes. At the time of defendant's cellmate's questioning, defendant had previously been arrested, charged, and retained counsel for crimes related to defendant's participation in a shoot-out and police chase. Applying the Supreme Court's reasoning in *Prieto-Rubio*, we hold that it was reasonably foreseeable that the informant's questioning of defendant regarding defendant's uncharged conspiracies would result in the discovery of incriminating information regarding charges for which defendant had already obtained counsel and, accordingly, reverse and remand defendant's convictions that were affected by the trial court's error in denying the motion to suppress and otherwise affirm.

We review the denial of a motion to suppress for legal error and defer to the trial court's findings of historical fact if there is constitutionally sufficient evidence in the record to support them. *State v. Plew*, 255 Or App 581, 583, 298 P3d 45 (2013). The relevant facts are not disputed for purposes of this appeal.

Defendant was contacted by an officer from the Astoria Police Department at the Lamplighter Hotel in Astoria because the hotel staff had found suspicious items in his room. Defendant answered his door with a handgun, and, after initially failing to comply with the officer's instructions to open his door, he became involved in a shootout with police. Escaping the shoot-out, defendant led law enforcement officers on an extended car chase through Clatsop County. The officers eventually caught defendant and charged him with two counts of attempted aggravated murder (Counts 1 and 2), two counts of attempted assault in the first degree (Counts 3 and 4), one count of attempting to elude police (Count 5), one count of identity theft (Count 6), one count of possession of a firearm silencer (Count 7), one count of attempted possession of a destructive device (Count 8), and five counts of recklessly endangering another person (Counts 9 to 13). Defendant was arraigned and retained an attorney to represent him on those charges.

Approximately three months after defendant was arrested and had retained counsel for his initial charges, defendant's cellmate, Russell, contacted the two detectives who were investigating defendant's charged conduct. In the detectives' first interview with Russell, he discussed several statements that defendant had made to him about defendant's pending charges as well as a number of *new* criminal conspiracies defendant was planning with Russell. Based on this information, the detectives decided to apply for a warrant to record conversations between Russell and defendant by having Russell wear a body wire. In addition to seeking information about defendant's uncharged conspiracies, the probable cause affidavit in support of their warrant application stated, in part:

"[B]ecause of the aforementioned unsolicited information provided to *** Russell by [defendant] during their incarceration at Clatsop County Jail *** describing [defendant's]

actions and the events in an officer involved shooting with Astoria Police Department Officers * * * it is reasonable to believe that [defendant] may discuss or repeat the same previously mentioned details. Therefore, I am asking the Court that any conversations provided by [defendant] to * * * Russell, which are unsolicited and may relate to the crimes involving Attempted Aggravated Murder (ORS 163.095), Assault in the First Degree (ORS 163.185), Unlawful Use of a Weapon (ORS 166.220), and Unlawful Possession of a Firearm Silencer (ORS 166.272)—for which [defendant] has already been charged—be allowed in this request for intercepted oral communications."

Based on the detectives' application, a warrant was issued to record generally defendant's conversations with Russell.

Prior to his first recorded conversation with defendant, Russell once again approached the detectives with information about defendant's *new* criminal activities. During that additional meeting, Russell disclosed that defendant had conspired with Russell to kill a police officer and his ex-wife, both of whom defendant believed were likely to testify against him in his criminal trial. Russell also told the detectives that he and defendant had conspired to severely injure the assistant district attorney prosecuting defendant's case. Russell also provided the detectives with statements written by defendant regarding the new criminal conspiracies.

The detectives successfully recorded three conversations between Russell and defendant. Prior to each of Russell's taped conversations with defendant, the detectives told Russell not to discuss defendant's pending charges. The detectives wanted to limit the discussion to defendant's new crimes. However, despite the detectives' repeated warnings, Russell discussed defendant's pending charges during each recording session.

After the detectives finished intercepting the conversations between Russell and defendant, defendant's indictment was amended to add two charges of solicitation to commit aggravated murder (Counts 14 and 15) and one charge of solicitation to commit assault in the first degree (Count 16), as well as two counts of conspiracy to commit aggravated murder (Counts 17 and 18) and one count

of conspiracy to commit assault in the first degree (Count 19). Defendant filed a motion to suppress, among other things, the statements he had made to Russell during their recorded conversations and the physical evidence obtained by the state as a result of those conversations, arguing that Russell's questioning violated defendant's Article I, section 11, right to counsel. The state opposed the motion, arguing that defendant's Article I, section 11, right was not violated because the uncharged conduct that detectives were investigating through Russell was factually unrelated to defendant's charged offenses.

The trial court granted defendant's motion to suppress in part. It suppressed all conversations about defendant's previously charged crimes, but allowed the admission of defendant's statements regarding his new crimes, as well as the physical evidence gathered as a result of Russell's interrogations. In its order, the trial court noted that "the original charges * * * were months before the later charges arose" and that, "[o]ther than defendant being in jail on the [charged offenses], there is no overlapping evidence" between the two sets of charges.

The case proceeded to a jury trial, where defendant was convicted of 13 of the 19 charges brought against him. Defendant appealed. We affirmed without opinion. *Savinskiy*, 272 Or App 664. Defendant petitioned the Supreme Court for review, and, by order, the Supreme Court vacated our decision and remanded the case in light of its decision in *Prieto-Rubio*. On remand, we are asked to decide the limited issue of whether, in light of the Supreme Court's decision in *Prieto-Rubio*, defendant's right to counsel under Article I, section 11, was violated when Russell asked defendant about his then-uncharged conspiracy crimes at the request of the investigating detectives.

Article I, section 11, states, in part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *." The Article I, section 11, right to counsel attaches after the state "ha[s] * * * initiated a criminal prosecution." *State v. Sparklin*, 296 Or 85, 92, 672 P2d 1182 (1983) (internal quotation marks omitted). That right attaches to "'certain evidence-gathering processes

which are deemed critical stages of the prosecution as an extension of a defendant's right to representation by counsel in court.'" *Id.* at 94 (quoting *State v. Newton*, 291 Or 788, 802, 636 P2d 393 (1981)). Therefore, "[o]nce an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend." *Id.* at 93.

Article I, section 11, can also foreclose interrogation of a defendant without his or her attorney present when the interrogation is regarding uncharged conduct and occurs after the defendant has retained counsel for a previously charged offense, if the charged and uncharged conduct is "sufficiently related." *Prieto-Rubio*, 359 Or at 36-37. We determine whether the uncharged conduct is sufficiently related to the charged conduct as to implicate a defendant's Article I, section 11, right to counsel by examining the "facts and circumstances of each case and whether they establish that it is reasonably foreseeable to a person in the position of the questioner that questioning will elicit incriminating information involving the charged offense for which the defendant has obtained counsel." *Id.* "Relevant considerations include 'temporal proximity, location, [the] nature of defendant's conduct, and the nature of the investigation process itself[,] and whether it involves the same or separate personnel.'" *State v. Hensley*, 281 Or App 523, 533, 383 P3d 333 (2016) (quoting *Prieto-Rubio*, 359 Or at 36 (brackets in *Hensley*)). However, the subjective impressions of the interrogator have no bearing on that test. *Prieto-Rubio*, 359 Or at 37.

In *Preito-Rubio*, the Supreme Court held that a reasonable person would foresee that questioning a defendant about two uncharged incidents of sexual abuse would elicit incriminating evidence of a third, previously charged incident of sexual abuse for which the defendant had already obtained counsel. *Id.* at 37-38. The court noted that the charged and uncharged conduct was committed at the same place, involved similar types of physical conduct, and involved similar victims. *Id.* at 37. Further, the court recognized that the detective investigating all three cases was the same, and

that that detective admitted that it was "impossible to have a conversation with defendant and not have some overlap between the charged and uncharged offenses." *Id.* (internal quotation marks omitted). The court also recognized that "the offenses occurred at substantially different times." *Id.* at 38. However, the court concluded that "the difference in times [did] not alter * * * that it was highly likely that [the] questioning would have some overlap with the charged offense." *Id.* Consequently, the court held that the detective's interrogation violated Article I, section 11. *Id.* at 37-38.

We came to a similar conclusion applying the *Prieto-Rubio* test in *Hensley*. In *Hensley*, the defendant was charged with being a felon in possession of a firearm after being seen with a firearm at a Plaid Pantry convenience store. 281 Or App at 526. After defendant failed to appear on that charge, two detectives arrested him and, without the defendant's attorney present, interrogated him about a recent robbery of a US Bank, as well as a number of older robberies. *Id.* at 526-27. After noting that the Plaid Pantry incident and US Bank robbery both likely involved the same firearm, occurred in the same jurisdiction, occurred within six days of each other, and involved investigating officers who were sharing information with each other, we held that "[a] reasonable questioner in [the detective's] position would have foreseen that questions about the US Bank robbery might elicit incriminating evidence about the charged felon-in-possession case for which defendant had counsel." *Id.* at 533. Accordingly, we concluded that the detectives violated the defendant's Article I, section 11, right to counsel. *Id.* at 534.

We begin by noting that no one disputes that defendant was "interrogated" by the state when he was questioned by Russell; therefore, we do not address that issue. Turning to the question of whether those interrogations were unlawful, we recognize that, as in *Prieto-Rubio*, defendant's charged and uncharged conduct occurred at substantially different times. Further, we recognize that the offenses occurred in different locations, involved different physical conduct, and involved different victims. Regardless, based on critical overlapping evidence, we nonetheless conclude that, given the nature of defendant's uncharged crimes, a questioner would have "reasonably foresee[n]" that interrogating defendant

about those uncharged offenses would elicit incriminating evidence regarding his charged offenses. *Prieto-Rubio*, 359 Or at 36-37.

Like the defendant's charged and uncharged conduct in *Hensley*, defendant's charged and uncharged conduct in this case involves overlapping evidence. Significantly, here, the evidence of defendant's uncharged conduct was inherently incriminating evidence of defendant's charged crimes. Russell was interrogating defendant about a conspiracy to murder witnesses and assault the prosecutor in defendant's trial for his *charged conduct*. Because of the nature of those conspiracies, *any* evidence regarding those crimes is inherently incriminating evidence of defendant's charged crimes. As the prosecutor in defendant's case stated in his closing argument:

> "The big part of this case, the big issue, is the conspiracy and the solicitation, the issue with * * * Russell. And the * * * Russell part of it explains the Lamplighter [charges]. Just ask yourselves, what person tries to cover up another incident? The kind of person that knew they did something wrong. Because why cover it up if he didn't?"

We conclude that the amount of overlapping evidence between these two cases is so substantial that any questioner would have reasonably foreseen that interrogating defendant about his conspiracies would elicit incriminating evidence about his previously charged conduct, because any incriminating evidence that the interrogators obtained relating to the conspiracies would also be incriminating as to defendant's original charges.

Overlapping evidence is not the only factor that convinces us that defendant's Article I, section 11, right to counsel was violated during Russell's interrogations of defendant. First, as in *Prieto-Rubio*, the detectives investigating defendant's original charges were the same detectives who were investigating the new conspiracies. Further, as in *Prieto-Rubio*, the detectives' investigation of defendant's charged and uncharged crimes overlapped. That overlap is best demonstrated by this statement made by the detectives in their warrant application:

"[B]ecause of the aforementioned unsolicited information provided to *** Russell by [defendant] during their incarceration at Clatsop County Jail *** describing [defendant's] actions and the events in an officer involved shooting with Astoria Police Department Officers *** it is reasonable to believe that [defendant] may discuss or repeat the same previously mentioned details. Therefore, I am asking the Court that any conversations provided by [defendant] to *** Russell, which are unsolicited and may relate to the crimes involving Attempted Aggravated Murder (ORS 163.095), Assault in the First Degree (ORS 163.185), Unlawful Use of a Weapon (ORS 166.220), and Unlawful Possession of a Firearm Silencer (ORS 166.272)—for which [defendant] has already been charged—be allowed in this request for intercepted oral communications."

As that statement demonstrates, during their investigation of defendant's uncharged conduct, the detectives were explicitly attempting to discover more information about his charged crimes. That statement also demonstrates that, like the detective in *Prieto-Rubio*, the detectives in this case foresaw that Russell's interrogations were likely to reveal incriminating information about defendant's previously charged crimes.

As a result, based on all of the above factors, we conclude that, in this case, it was reasonably foreseeable to a person in the position of the questioner that questioning defendant would elicit incriminating information involving defendant's charged offenses. *Prieto-Rubio*, 359 Or at 36-37. Consequently, defendant's Article I, section 11, right to counsel was violated by Russell's interrogations.

On remand, however, relying on a footnote in which the Supreme Court "express[es] no opinion" on the matter, the state argues that *Prieto-Rubio* does not apply to this case because *Prieto-Rubio* is an Article I, section 11, "use" case whereas this case is an Article I, section 11, "attachment" case. *Id.* at 38 n 5. That argument is unconvincing.

According to the state, a "use" case under Article I, section 11, "pertains to **when** interrogation on crimes for which the right to counsel *has not attached* **can be used** to prove crimes for which the right to counsel has attached." (Emphasis and boldface in original.) In contrast, the state

contends that, in an "attachment" case, the issue is whether a defendant's Article I, section 11, "right to counsel attaches to an uncharged crime." The state's argument overstates the holding in *Prieto-Rubio* and ignores our case law.

As noted above, the Article I, section 11, right to counsel attaches *only* "as of the time of charging." *Prieto-Rubio*, 359 Or at 24. Thus, the right of counsel can *only* attach to *charged* crimes. Therefore, the issue addressed by *Sparklin* and its progeny—including *Prieto-Rubio*—is not, as the state argues, whether a defendant's Article I, section 11, right to counsel attaches to a defendant's *uncharged* crimes. The Article I, section 11, right to counsel does not attach to *uncharged* crimes. Instead, the issue in those cases is the extent to which a defendant's Article I, section 11, right to counsel on his or her charged offenses "prohibits the police from questioning a represented defendant charged with a crime about other, uncharged offenses." *Prieto-Rubio*, 359 Or at 18. As *Prieto-Rubio* recognized in the footnote on which the state relies, the questions of what evidence gathered as a result of an unlawful interrogation can be used and whether that evidence can be used to prosecute uncharged criminal conduct are separate inquiries that the Supreme Court did not address. *Id.* at 38 n 5 ("It could be argued that a violation of defendant's Article I, section 11, right to counsel [on his charged crimes] would justify the exclusion of evidence only as to that case, not as to [defendant's uncharged case;] * * * however, * * * we express no opinion one way or the other about [that issue]."). However, we have had the opportunity to address those questions in our case law.

As we have previously held, "[i]f a defendant is interrogated in violation of" their Article I, section 11, right to counsel, "any evidence discovered as a result of that unlawful interrogation * * * must be suppressed." *State v. Beltran-Solas*, 277 Or App 665, 669, 372 P3d 577 (2016); *see also Hensley*, 281 Or App at 534 (same). That includes "evidence of other crimes," including uncharged crimes, unless "the state demonstrates that the evidence was obtained by means separate from the unlawful interrogation." *Beltran-Solas*, 277 Or App at 669 (internal quotation marks omitted); *see also Hensley*, 281 Or App at 534 (same). Thus, where the state makes no showing that the "evidence of other

crimes" obtained as a result of the unlawful interrogation was "obtained by a means separate from [that] unlawful interrogation," that evidence should be suppressed in the trial for those other, uncharged crimes. *See Beltran-Solas*, 277 Or App at 671 (suppressing "other crimes" evidence as to those crimes). Here, the state makes no argument that any of the statements made by defendant during Russell's interrogations were obtained by any means other than the unlawful interrogation. Consequently, applying our case law, the state's Article I, section 11, violation mandates the suppression of all of the prejudicial statements that defendant made during those interrogations—where defendant's counsel neither attended nor was notified of the interrogations—as well as any prejudicial physical evidence gathered as a result of those interrogations, including any evidence of defendant's then-uncharged conspiracy crimes. The trial court erred in failing to suppress that evidence.[1]

The final question we must address is whether the trial court's error was harmless. "We will not reverse a conviction on grounds of evidentiary error if there is 'little likelihood' that the error affected the jury's verdict." *Hensley*, 281 Or App at 541 (quoting *State v. Davis*, 336 Or 19, 32-33, 77 P3d 1111 (2003)). We first turn to defendant's convictions on his newer charges. Having reviewed the record, we conclude that the trial court's error likely affected the jury's verdict on Counts 17, 18, and 19—the charges relating to defendant's conspiracy to murder witnesses and maim the prosecutor. The statements that defendant made about those conspiracies to Russell during Russell's recorded interrogations and the physical evidence the state obtained as a result of those interrogations were a key part of the state's case proving those crimes.

---

[1] In defendant's supplemental brief, he appears to argue for the suppression of all of Russell's trial testimony. However, not all of Russell's testimony was based on his interrogation of defendant. It was also based on his conversations with defendant before he began acting as an agent of the state, during which defendant's Article I, section 11, right to counsel had not attached. *See State v. Smith*, 310 Or 1, 13, 791 P2d 836 (1990) (stating that, for the exclusionary rule to apply to the actions of an informant, the state must be "involved to a sufficient extent in initiating, planning, controlling or supporting the informant's activities" (internal quotation marks and brackets omitted)). Consequently, only Russell's testimony regarding his state-directed interrogations of defendant and evidence gained as a result of those interrogations must be suppressed.

Turning to defendant's older crimes, we also conclude that the trial court's failure to suppress the evidence obtained as a result of Russell's interrogations likely affected the jury's verdicts on Counts 1, 2, and 7—the attempted murder and attempted possession of a silencer charges. The state's case surrounding those charges focused predominately on whether defendant had the requisite criminal intent to commit those crimes, as well as defendant's and Russell's credibility. As evidenced by the above-quoted portion of the prosecutor's closing argument, the state relied on evidence of defendant's conspiracies to prove that defendant had criminal intent when he initiated the shoot-out with police officers and when he attempted to possess a silencer. Further, the state also used the evidence obtained as a result of Russell's interrogations to bolster Russell's credibility, while impeaching defendant and undermining his claims that he did not know the two officers at his door at the Lamplighter Hotel were police officers before pointing his gun at them and that he did not know that possessing a silencer without a license was unlawful.

In contrast, we conclude that there was "little likelihood" that the trial court's error affected the jury's verdict on Counts 5, 6, 9, 10, 11, 12, and 13—the charges for fleeing or attempting to elude a police officer, identity theft, and reckless endangerment. Counts 5, 9, 10, 11, 12, and 13—the attempt to elude and reckless endangerment charges—all stem from the police's automobile chase of defendant after defendant pointed his gun at the officers at the Lamplighter Hotel. Those charges were supported by evidence that was not obtained from Russell's illicit interrogations. That evidence included the testimony of officers involved in the chase, video of the chase, and defendant's own testimony at trial. Similarly, defendant's conviction for identity theft—Count 6—was also supported by evidence that was not obtained as a result of Russell's illicit interrogations. That charge stemmed from defendant's use of another name to rent his room at the Lamplighter Hotel and to rent a car. That charge was supported by physical evidence of defendant's false identification and defendant's admissions at trial that he was using false identification at the hotel. In fact, the evidence on all of those charges—the attempts to elude, the

reckless endangerment, and the identity theft—was such that defendant's attorney conceded in his closing argument that those crimes "happened" and that, at the very least, the jury would come to "a conclusion very easily" on them. Given that evidence before the jury, defendant's attorney's concession, and the fact that the erroneously admitted evidence was not particularly probative as to defendant's guilt on Counts 5, 6, 9, 10, 11, 12, and 13, there is little likelihood that the trial court's error affected those convictions.

Consequently, because the trial court erred, and that error was harmful only as to some of defendant's convictions, we reverse and remand only those convictions that were affected by the error and affirm defendant's remaining convictions. *See State v. Riddle*, 156 Or App 606, 608, 969 P2d 1032 (1998), *rev'd on other grounds*, 330 Or 471, 8 P3d 980 (2000) (reversing and remanding only the convictions that were affected by the trial court's error).

Conviction on Counts 1, 2, 7, 17, 18, and 19 reversed and remanded; remanded for resentencing; otherwise affirmed.