FLYNN, J.
**804 While defendant was incarcerated and awaiting trial on pending criminal charges, law enforcement officers learned that defendant had solicited another inmate to harm the prosecutor and murder two of the anticipated witnesses for the prosecution. Without notifying the lawyer who was representing defendant on the pending charges, the officers arranged for the other inmate to secretly record defendant in a conversation about his new criminal activity, and the state later charged defendant with multiple new offenses arising out of that new criminal activity. The Court of Appeals held that the recorded questioning violated defendant's Article I, section 11, right to counsel "[i]n all criminal prosecutions," and precludes the state from using defendant's incriminating statements to convict him of the new offenses. We disagree. We conclude that defendant's Article I, section 11, right to counsel, which arose because of the initially pending charges, was not a right to limited police scrutiny of new criminal activity in which defendant was engaging to illegally undermine the pending charges.[1]
I. BACKGROUND
At the time of the recorded conversation, defendant was represented by counsel on multiple pending charges arising out of an earlier incident in which he engaged in a shootout with police at an Astoria motel, *559 followed by an extended, high-speed car chase. When defendant's fellow inmate reported that defendant had offered him money and weapons to assault the prosecutor and to murder two of the state's witnesses, law enforcement officers used the information to obtain sealed, ex parte court orders that authorized them to record the conversations between defendant and the informant. During those recorded conversations, defendant discussed his plans for the new criminal activity, but he also discussed the pending case. **805 A grand jury later amended defendant's existing indictment to add charges for offenses arising out of the new criminal activity, including two counts of conspiracy to commit murder of "another human being who was a witness in a criminal proceeding, *** related to the performance of official duties of [the witness] in the justice system," and one count of conspiracy to commit first degree assault against the prosecutor.
Before trial, defendant moved to suppress the evidence that the state obtained through the recorded conversations, arguing that the questioning violated his Article I, section 11, right to counsel because the officers had failed to notify defendant's attorney before directing the informant to question him. The trial court granted defendant's motion with respect to statements that defendant made about "anything related to" the original charges, on which he had been represented by counsel at the time of the questioning, but the court refused to suppress defendant's statements about the new criminal activity.
The new and original charges were tried together, and the state relied on defendant's statements about the new criminal activity as evidence that he was guilty of all of the charged offenses. The jury convicted defendant of the charges arising out of the original criminal activity as well as the conspiracy charges arising out of the new criminal activity.[2]
On appeal, defendant assigned error to the trial court's ruling on the motion to suppress, renewing his argument that the state obtained his statements about the new criminal activity in violation of his Article I, section 11, right to counsel. While defendant's appeal was pending, this court decided State v. Prieto-Rubio , 359 Or. 16, 18, 376 P.3d 255 (2016), which held that the defendant's Article I, section 11, right to counsel protected him during **806 police questioning about other, uncharged criminal activity because it was "objectively reasonably foreseeable that the questioning [would] lead to incriminating evidence concerning the offense for which the defendant has obtained counsel."[3] Relying on Prieto-Rubio , the Court of Appeals agreed with defendant that the questioning violated his Article I, section 11, right to counsel, and concluded that the trial court's failure to suppress the resulting statements required reversal of defendant's convictions for both the new charges and some of the original charges.[4] State v. Savinskiy , 286 Or. App. 232, 234, 243-44, 399 P.3d 1075 (2017). We allowed the state's petition for review to consider whether the Court of Appeals correctly reversed defendant's convictions on the charges arising out of his new criminal activity.
II. ANALYSIS
On review, the state does not dispute that "it was reasonably foreseeable that questioning *560 about defendant's new conspiracy crimes would incriminate him for the originally charged crimes."[5] Given that concession, defendant understandably argues that Prieto-Rubio supports the Court of Appeals' conclusions that the state violated defendant's right to counsel and that the resulting evidence must be suppressed.
However, the question we ultimately must answer is whether Article I, section 11, guarantees a right to counsel during police questioning about the kind of new, uncharged **807 criminal activity in which defendant was engaged. Answering that question is more complicated than simply asking if the test that we articulated in Prieto-Rubio can be applied to the police questioning in this case.[6] In Prieto-Rubio , we were not called upon to consider whether Article I, section 11, protects a defendant from police inquiry into new criminal activity in progress, and we now conclude that the right does not extend that far.
When construing a provision of the original Oregon Constitution, which includes the Article I, section 11, right to counsel, we consider "the text in its context, the historical circumstances of the adoption of the provision, and the case law that has construed it[,]" with the goal of identifying "the meaning most likely understood by those who adopted the provision" and, in light of that meaning, identifying "relevant underlying principles that may inform our application of the constitutional text to modern circumstances." State v. Davis , 350 Or. 440, 446, 256 P.3d 1075 (2011) (citing Priest v. Pearce , 314 Or. 411, 415-16, 840 P.2d 65 (1992), and State v. Hirsch/Friend , 338 Or. 622, 631, 114 P.3d 1104 (2005) ). Given the principles that underlie our modern understanding of the Article I, section 11, right to counsel, and given the nature of defendant's new criminal activity, we conclude that police were not required to provide notice to the attorney representing defendant on the pending charges before inquiring about his new, uncharged and ongoing conspiracy to illegally undermine the pending charges.[7]
**808 A. The Text and Evolving Construction of the Article I, section 11, Right to Counsel
Both Davis and Prieto-Rubio extensively considered the historical circumstances surrounding the adoption of Article I, section 11, and the case law construing it. As we explained in Prieto-Rubio , the Article I, section 11, guarantee of counsel "-like its federal counterpart, the Sixth Amendment to the federal constitution-was originally understood to apply only to the conduct of criminal trials." 359 Or. at 24, 376 P.3d 255. That construction is not surprising given the text of that provision:
"In all criminal prosecutions the accused shall have the right to public trial by an impartial jury in the county in which the offen[s]e shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to *561 have compulsory process for obtaining witnesses in his favor."
Or. Const. Art. I, § 11 (1857).[8] However, changes in the nature of criminal prosecutions and "recognition that a defendant's 'assistance' of counsel would be less than meaningful if it were limited to the trial itself" eventually led to a "doctrinal shift." Prieto-Rubio, 359 Or. at 24, 376 P.3d 255. See also Davis , 350 Or. at 470-71, 256 P.3d 1075 (explaining that the Supreme Court justified extension of the Sixth Amendment right to counsel to pretrial stages "by reference to concerns for fundamental fairness and a recognition that the realities of modern criminal procedure often make pretrial assistance of counsel essential to an accused's defense at trial"). Thus, this court eventually concluded that a person who is charged with a crime "is entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant."[9] State v. Sparklin , 296 Or. 85, 93, 672 P.2d 1182 (1983).
**809 As Sparklin emphasizes, however, "the [A]rticle I, section 11 guarantee of an attorney, like the federal counterpart, remains focused on the trial; that is, it is the protection of rights to which a defendant is entitled in the trial itself which the guarantee is intended to preserve." Id. at 94, 672 P.2d 1182. That focus on protecting a defendant's right to counsel at trial produces important limits on the protection that Article I, section 11, affords, as Sparklin highlights. The defendant in Sparklin was involved in an incident in Portland in which Mansell was beaten and had his automobile and credit cards stolen. Initially, however, the defendant was arrested in Eugene after using one of Mansell's stolen credit cards and was charged only for that offense. Id . at 87, 672 P.2d 1182. Without notice to the attorney representing defendant on the credit-card offense, detectives in Portland interrogated the defendant about an unrelated murder and robbery of a different victim, Davidson, as well as about the assault on Mansell. Id .
When the defendant was later prosecuted for the offenses against Davidson, he sought to suppress evidence from the interrogation as obtained in violation of his right to counsel under Article I, section 11. Id. at 92, 672 P.2d 1182. The defendant argued "that representation by an attorney on one charge insulates [a] defendant from police questioning regarding any crime for which he may be a suspect, whether or not it stems from the incidents surrounding the crime charged." Id. at 94, 672 P.2d 1182. But this court disagreed. Sparklin recognized that one jurisdiction-New York-had eliminated any offense-based distinction once the right to counsel arises, but we rejected that approach. Id . at 95 n. 14, 672 P.2d 1182. We explained that other courts to consider the issue had held that police interrogation does not violate a defendant's right to counsel "when the interrogation concerns factually unrelated crimes," and we adopted a similar test for Article I, section 11. Id. at 96, 672 P.2d 1182.
As Sparklin explains:
"It is the fairness of the 'criminal prosecution' which counsel's presence helps to ensure. For this reason the [A]rticle **810 I, section 11 right to an attorney is specific to the criminal episode in which the accused is charged. The prohibitions placed on the state's contact with a represented defendant do not extend to the investigation of factually unrelated criminal episodes."
Id . at 95, 672 P.2d 1182 (footnote omitted). This court proposed asking whether the activity under investigation was part of "the criminal episode in which the accused is charged" as the test for whether interrogation *562 about an uncharged offense fits within the protection of the defendant's Article I, section 11, right to counsel on the charged offense. Id . Applying that limitation, Sparklin explained that the interrogation did not violate the defendant's right to counsel under Article I, section 11, "with regard to the unrelated Davidson case[.]" Id . at 98, 672 P.2d 1182. But the court also emphasized: "Because defendant was represented by an attorney for the offenses against Steven Mansell, interrogation on this subject was improper[.]" Id.
Although the court's statement about interrogation regarding the Mansell offenses-which were not at issue on appeal-was unnecessary to the court's decision, the statement was not just gratuitous. Rather, the juxtaposition serves to clarify the court's holding regarding the scope of the protection that Article I, section 11, extends to a person who is subject to police questioning. Sparklin 's discussion of the Mansell offenses clarified that the right to counsel protects a defendant with respect to police questions about some uncharged offenses. However, Sparklin 's holding with respect to the Davidson offenses clarified that a defendant's right to the assistance of counsel in the prosecution of pending criminal charges is not so broad that it covers questions about all uncharged criminal activity. Finally, the court's ability to harmonize the two propositions illustrates that, in a single interrogation, the right to counsel may extend protection for some purposes but not others, depending on the extent to which the question will lead to "incriminating evidence or statements for use in the prosecution" of the offense to which the right to counsel has attached. Id . at 93, 672 P.2d 1182. Given those limitations, we have described Sparklin as clarifying that the Article I, section 11, right to counsel is "offense-specific[.]" State v. Gilmore , 350 Or. 380, 385, 256 P.3d 95 (2011).
**811 We pause to emphasize that there is no dispute regarding the principle that a defendant's Article I, section 11, right to counsel on charged offenses shields the defendant from police inquiry into some uncharged criminal activity while erecting no barrier to police inquiry into other uncharged criminal activity. The issue in dispute is whether defendant's new criminal activity is the kind of uncharged criminal activity that falls beyond the boundary of Article I, section 11, protection.
Sparklin was this court's first attempt to identify the location of the line between questions about uncharged offenses to which the protection of Article I, section 11, extends and questions about other uncharged offenses to which Article I, section 11, extends no protection. In Sparklin , the facts and circumstances of the defendant's crimes against Mansell were sufficiently distinct from the facts and circumstances of his uncharged criminal activity against Davidson that the "criminal episode" test allowed this court to readily conclude that questioning about the Davidson incident fell on one side of the line while questioning about the Mansell incident fell on the other. However, the interrogation in Prieto-Rubio illustrated that Sparklin 's"criminal episode" test was inadequate to explain the scope of the Article I, section 11, right to counsel when police questioning involved uncharged crimes that shared significant overlap of facts and circumstances with charged crimes. See Prieto-Rubio , 359 Or. at 34, 376 P.3d 255 (observing that the term, "criminal episode" has been used in such a variety of ways within the criminal law that its meaning is not always clear).
The defendant in Prieto-Rubio had been charged with first-degree sexual abuse of a child, A, and he had retained counsel. Id . at 19, 376 P.3d 255. Without notifying that attorney, a detective questioned the defendant about allegations that he had abused two other children-K and L-several months before the alleged abuse of A. Id. As we emphasized, however, the detective recognized that the circumstances of the three crimes were so similar that "it was 'impossible' to have a conversation with defendant 'and not have some overlap' between the charged and uncharged offenses[.]" Id. at 37-38, 376 P.3d 255. And, indeed, the questions produced incriminating **812 information about the charged abuse of A that the state later used to prosecute the defendant for that offense. *563 Both parties in Prieto-Rubio argued that the existing Sparklin test supported their positions, so this court undertook "to clarify" Sparklin 's rule for determining the extent to which a defendant's right to counsel shields the defendant from questions about uncharged conduct. Id . at 23, 33-34, 376 P.3d 255. Although one of the amici in Prieto-Rubio invited this court to "abandon Sparklin and adopt in its stead" a rule that would shield a defendant from all police questioning if the defendant is represented on pending charges, this court adhered to Sparklin 's conclusion that the constitutional guarantee does not extend that blanket protection. Id. at 34 n. 4, 376 P.3d 255. This court in Prieto-Rubio also rejected as too broad the defendant's proposal that protection under Article I, section 11, should extend at least to questioning about any crime that has "some factual relation" to the uncharged crime. Id. at 35-36, 376 P.3d 255. Instead, the formulation on which this court settled to clarify whether a defendant's Article I, section 11, right to counsel protects him from the questions about uncharged crimes asks "whether it is objectively reasonably foreseeable that the questioning will lead to incriminating evidence concerning the offense for which the defendant has obtained counsel." Id. at 18, 376 P.3d 255.
B. Prieto-Rubio does not resolve whether Article I, section 11, shielded defendant from questioning about his new criminal activity.
As the state recognizes, Prieto-Rubio 's test is phrased broadly enough that it can reach questioning about the kind of new criminal activity in which defendant was engaging. However, there are important factual distinctions between the uncharged criminal activity that the officers sought to investigate in Prieto-Rubio and the uncharged criminal activity that officers sought to investigate here. Prieto-Rubio addressed the scope of the right to counsel in the context of uncharged crimes that shared significant overlap of facts and circumstances with the charged crime and that were completed before the time that the state indicted the defendant for the abuse of his third victim. As this court explained, "whether charged and uncharged offenses are **813 sufficiently related as to implicate the state constitutional right to counsel will depend on the facts and circumstances of each case[.]" Id. at 36-37, 376 P.3d 255. The facts and circumstances of the charged crime in Prieto-Rubio duplicated to a significant extent the earlier, uncharged crimes because, as this court emphasized, all the crimes were committed in the defendant's home, all involved similar types of physical conduct, and all involved child-victims who were members of the defendant's family. Id. at 37, 376 P.3d 255.
Here, by contrast, any duplication between the facts and circumstances of defendant's new criminal activity and the facts and circumstances of his charged crimes is minimal: the new criminal activity occurred in a different setting, involved different conduct, and involved victims who were targeted for a very different reason. Moreover, and more significantly, unlike the uncharged crimes in Prieto-Rubio , defendant's uncharged criminal activity began after he was charged with the original offenses, and the uncharged criminal activity involved his ongoing effort to harm the prosecutor and witnesses against him to obstruct the pending prosecution. We conclude that those factual distinctions are constitutionally significant.
C. The principles that govern the scope of Article I, section 11, do not apply to defendant's new criminal activity.
The scope of the Article I, section 11, right to counsel should be understood in the context of key principles that emerge from our discussion in Prieto-Rubio. In that opinion, we extensively discussed the competing views of the Sixth Amendment right to counsel that emerge from the Supreme Court's decision in Texas v. Cobb , 532 U.S. 162, 121 S. Ct. 1335, 149 L.Ed.2d 321 (2001). In particular, we described the rule that Sparklin had articulated for Article I, section 11, as "of equal scope" to the rule proposed by four dissenting justices in Cobb. Prieto-Rubio , 359 Or. at 28, 376 P.3d 255 (internal quotation marks omitted). As we explained, this court in Sparklin had understood that our test for whether police could inquire about uncharged crimes without violating Article I, section 11, *564 was consistent with an implicit holding of the United States Supreme Court that the Sixth Amendment reached questioning about uncharged criminal conduct that **814 is closely related to the charged offense. Id. (citing Brewer v. Williams , 430 U.S. 387, 97 S. Ct. 1232, 51 L.Ed.2d 424 (1977) ). We emphasized that most state and federal courts had interpreted Brewer in the same way, until the Supreme Court rejected that interpretation and limited the scope of the Sixth Amendment "to the specific charged offense," and to uncharged offenses that would be considered the "same offense" for purposes of the federal double jeopardy bar to successive prosecutions. Id. at 26, 30, 31 n. 1, 376 P.3d 255 (citing Cobb, 532 U.S. at 172, 121 S.Ct. 1335 ).
The defendant in Cobb had burglarized his neighbor's house and, in the process, murdered the neighbor's wife and daughter, although they were initially reported only to be missing. After the defendant was charged with robbery and appointed counsel to represent him on that charge, police questioned the defendant about the missing wife and daughter without notifying his attorney and ultimately obtained his confession to the murders. Cobb , 532 U.S. at 165-66, 121 S.Ct. 1335. Because the defendant in Cobb had not been charged with murder, and because the murders would not be considered the "same offense" for double jeopardy purposes, the Supreme Court majority held that the defendant's confession to the murders was admissible in his trial for those crimes. Id. at 174, 121 S. Ct. 1335.
Prieto-Rubio makes clear that the result would have been different under Article I, section 11. By endorsing the conclusion and reasoning of the Cobb dissent, however, Prieto-Rubio also illustrates why Article I, section 11, should not be understood as shielding defendant in this case from the investigation into his new criminal activity.
The first concern that the Cobb dissent raised is that, because a "single instance of conduct" can involve numerous separate criminal offenses, the majority's rule would permit law enforcement officials to question a defendant "about his or her conduct on the single relevant occasion without notifying counsel unless the prosecutor has charged every possible crime arising out of that same brief course of conduct." Id. at 183, 121 S. Ct. 1335. The dissent described that "random" approach to Sixth Amendment protections-with the scope dependent on how much the state pleads in the original indictment-as **815 raising "substantial concerns about the circumvention of the Sixth Amendment right[.]" Id. at 183, 185, 121 S. Ct. 1335.
We noted that the Cobb majority's rule had been subject to similar criticism by other authors as well. Prieto-Rubio , 359 Or. at 31 n. 2, 376 P.3d 255. For example, we cited Andrew Hanawalt, Investigation of Represented Defendants After Texas v. Cobb , 81 Tex. L. Rev. 895, 896 (2003), which expressed concern that the Cobb majority rule invites "strategic misbehavior" by government agents who "will now be tempted to interrogate represented defendants without their lawyers about the very acts that constitute elements of already charged crimes," and Michael J. Howe, Tomorrow's Massiah: Towards A "Prosecution Specific" Understanding of the Sixth Amendment Right to Counsel , 104 Colum. L. Rev. 134, 149-50 (2004), for the proposition that, "[g]iven the abundance of overlapping and related statutory offenses, a single criminal transaction can be characterized-and prosecuted-as a number of offenses, all just different enough from one another to satisfy" the double-jeopardy test. Prieto-Rubio , 359 Or. at 31 n. 2, 376 P.3d 255.
The category of preexisting and completed uncharged offenses, which we addressed in Prieto-Rubio , also presents a potential for strategic manipulation. And we highlighted that concern in defining the scope of the defendant's Article I, section 11, right to counsel in a way that limited the state's inquiry into those uncharged offenses. As we explained, we rejected the state's proposal for a narrower scope in part because it "risks the sort of strategic charging behavior" for which the Cobb decision has been criticized. Id. at 35, 376 P.3d 255.
That risk of strategic initial charging is not presented when a defendant who has already been charged decides to engage in new criminal activity. Although there remains an opportunity for the state to delay charging new *565 criminal activity in order to investigate the new activity without the obstacle of counsel, it is not the kind of strategic manipulation about which we expressed concern in Prieto-Rubio . Rather, that strategy is a possibility in every criminal investigation, and it does not implicate Article I, section 11. See Davis , 350 Or. at 478-79, 256 P.3d 1075 (holding that Article I, section 11, **816 does not limit the state's ability to question a criminal suspect who has not yet been charged with a crime, even if the police know that the suspect has retained counsel to represent him in the matter under investigation).
This court's discussion of Cobb highlights another reason that Article I, section 11, should not be understood to erect barriers to the police inquiry into defendant's new criminal activity. As Prieto-Rubio explains, after Cobb adopted a narrow scope for the Sixth Amendment, other courts followed suit. 359 Or. at 31-32, 376 P.3d 255. The one exception is Indiana, which has adhered to a line similar to that articulated by this court in Sparklin and Prieto-Rubio , as a matter of independent interpretation of its state constitutional guarantee of the right to counsel. Id. at 32, 36, 376 P.3d 255 (observing that Sparklin 's explanation of the scope of Article I, section 11, "recalls the Indiana Supreme Court's decision in Jewell ").
Yet even the scope that the Cobb dissenters would have adopted for the Sixth Amendment, and the scope that Indiana has adopted for its state constitution, would not extend as far as an inquiry into the kind of new criminal activity in which defendant was engaged. As the dissenting opinion in Cobb emphasizes, "the particular aspect of the right here at issue-the rule that the police ordinarily must communicate with the defendant through counsel-has important limits." 532 U.S. at 178, 121 S.Ct. 1335 (Breyer, J., dissenting). "In particular," the dissent highlighted the limitation that is a product of the Supreme Court "recognizing the need for law enforcement officials to investigate 'new or additional crimes' not the subject of current proceedings." Id. (quoting Maine v. Moulton , 474 U.S. 159, 179, 106 S. Ct. 477, 88 L.Ed.2d 481 (1985) ).
In Moulton , the Court had drawn a Sixth Amendment distinction between the state obtaining "incriminating statements pertaining to pending charges" without notifying counsel and the state obtaining incriminating statements about the kind of new criminal activity in which defendant was engaged. 474 U.S. at 180, 106 S.Ct. 477. The defendant in Moulton , like defendant in this case, had expressed an interest in murdering a witness in his trial on pending charges. Id. at 162, 106 S. Ct. 477. During a secretly recorded conversation with an **817 informant, the defendant in Moulton briefly mentioned the possibility of harming witnesses but primarily discussed his pending prosecution-as police had expected he would. Id. at 165, 106 S. Ct. 477. The Court held that the questioning violated the defendant's rights to the extent that the police were "seeking evidence pertaining to pending charges," but the Court emphasized that it would not "exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained[.]" Id. at 179-80, 106 S. Ct. 477.
When the same circumstances presented themselves in Indiana, the Indiana Court of Appeals concluded that the defendant's right to counsel on pending charges did not shield him from police questioning about his plan to murder a witness against him in a pending prosecution. Leonard v. State , 86 N.E.3d 406, 413 (Ind. Ct. App. 2017), transfer den., 95 N.E.3d 1293 (Ind. 2018). The defendant in Leonard was in jail and awaiting trial on charges arising out of a fatal explosion in the house at which he had lived. As in the case before us, police in Leonard learned from another inmate that the defendant wanted to harm a person who might testify against him in the pending prosecution. Without notice to the defendant's attorney, an officer posed as a "hitman" and enticed the defendant to discuss his plans to murder the witness. The Indiana court concluded that the defendant's right to counsel on the pending charges did not shield him from questioning about his new criminal activity. Id.
In other words, neither the dissent in Cobb nor any other state has extended the scope of a defendant's constitutional right to counsel *566 on charged offenses as far as the dissent would extend that right. We are sympathetic to the perspective of the Leonard court that "[t]he right to counsel is a shield against what may well be the coercive influences of the State" and that the "rule's salutary function cannot be distorted to immunize one represented by an attorney against investigative techniques that capture a new crime in progress." 86 N.E.3d at 413 (internal citation omitted). We pointed to a similar concern in Prieto-Rubio when we emphasized that New York's one-time blanket prohibition on questioning a represented defendant, which this court rejected, **818 had been criticized as "excessively costly * * * [and a rule that] perversely gave more protection to the 'common criminal' already facing charges than to a 'first-time arrestee.' " 359 Or. at 34 n. 4, 376 P.3d 255. (quoting Pamela S. Karlan, Discrete and Relational Criminal Representation: The Changing Vision of the Right to Counsel, 105 Harv. L. Rev. 670, 679 (1992) ).[10]
As Sparklin emphasized and Prieto-Rubio reiterated, "the purpose of the Article I, section 11, right is to ensure that a defendant charged with a crime has the benefit of an attorney's presence, advice, and expertise 'in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant.' " 359 Or. at 36, 376 P.3d 255 (quoting Sparklin , 296 Or. at 93, 672 P.2d 1182 ) (emphasis in original). Sparklin explained that "[t]he development of the right to an attorney at pretrial confrontations between the state and the individual reflects a concern for the preservation of the fairness of trial and counsel's effectiveness in defending against the charge." Id. (quoting Sparklin , 296 Or. at 94, 672 P.2d 1182 ). The dissent emphasizes, and we agree, that Article I, section 11, "does more than merely guarantee a defendant that a lawyer will be present in court when a case is called for trial." 364 Or. at 828, 441 P.3d at 571 (Duncan, J., dissenting). But there is a fundamental difference between preserving counsel's effectiveness in defending against the charged offenses and erecting barriers to police inquiry into a new, uncharged and ongoing conspiracy to illegally undermine the pending charges.[11] Neither the purpose of Article I, section 11, right to counsel, nor the concerns that Prieto-Rubio emphasized in fashioning **819 a test to protect that right, support the dissent's rule that defendant's right to counsel on pending charges included a right to be assisted by counsel in his conspiracy to defeat the pending charges by committing murder and assault.
We, thus, conclude that the Article I, section 11, right to counsel on pending charges does not guarantee that the state will provide notice to a defendant's attorney before questioning the defendant about a new, uncharged and ongoing conspiracy to harm witnesses to a pending prosecution.[12] Although the dissent expresses concern that this will be construed as a test dependent on the subjective intent of the questioning officer, it is not a subjective test. 364 Or. at 829-30, 441 P.3d at ---- (Duncan, J., dissenting). Rather, the subject matter of the questions, not the subjective intent of the officer, determines whether the officer is permissibly *567 questioning a defendant about details of a new, ongoing conspiracy.
D. Application of the Rule to this Case.
The Court of Appeals followed the test that we articulated in Prieto-Rubio to conclude that the police violated defendant's Article I, section 11, right to counsel when they used an informant to question him about his conspiracy to harm the prosecutor and witnesses against him on the pending charges, because that is the kind of criminal activity that tends to incriminate a defendant with respect to pending charges. But we have concluded that the scope of the protection guaranteed by Article I, section 11, does not reach so broadly. Thus, the trial court did not err in allowing the state to use defendant's statements to prosecute him for the new criminal activity. On that issue, we disagree with the conclusion of the Court of Appeals.
The Court of Appeals also reversed and remanded some of defendant's convictions on the original charges, because the trial court allowed the state to use defendant's uncounseled statements about the new crimes to prosecute him for those original offenses. The premise of the court's ruling was that the statements were obtained in violation of defendant's right to counsel and, thus, must **820 be excluded. This court declined to review the issue that the state raised in challenge to that ruling. However, a different issue arises from our conclusion that police did not violate defendant's Article I, section 11, right to counsel when they questioned him about the new criminal activity. Because that conclusion rejects the premise of the Court of Appeals' ruling that the statements must be excluded, we expect that questions about that ruling almost certainly will arise in a retrial of the original charges, so we briefly address the issue.
Although defendant's right to counsel on the original, pending charges did not prevent the state from questioning him about his new criminal activity, we agree with the Court of Appeals that the trial court erred in allowing the state to use defendant's statements to prosecute him for the original charges. As we have explained, the fundamental purpose of the Article I, section 11, guarantee of an attorney "is the protection of rights to which a defendant is entitled in the trial itself[.]" Prieto-Rubio , 359 Or. at 27, 376 P.3d 255 (quoting Sparklin , 296 Or. at 94, 672 P.2d 1182 ). We emphasized in both Sparklin and Prieto-Rubio that protecting a defendant's Article I, section 11, right to the assistance of counsel at trial means recognizing that evidence obtained through pretrial investigative stages can undermine "the fairness of trial and counsel's effectiveness in defending the charge" if the evidence was obtained when counsel was not given the opportunity to be present. Prieto-Rubio , 359 Or. at 27, 376 P.3d 255 (quoting Sparklin , 296 Or. at 94, 672 P.2d 1182 ). At the time of the questioning in this case, defendant had been charged for the original criminal activity, and his Article I, section 11, right to counsel on those charges had arisen. To avoid undermining the "fairness of trial and counsel's effectiveness in defending" against those pending charges, we hold that the state may not use in the prosecution of those charges incriminating statements that the police obtained through questioning without notice to the counsel who was already defending against those charges.
III. CONCLUSION
Accordingly, the decision of the Court of Appeals is reversed as to defendant's convictions for conspiracy to commit murder (Counts 17-19) and otherwise affirmed. The **821 judgment of the trial court is reversed and remanded as to defendant's convictions for crimes charged in the original indictment but is otherwise affirmed.
Duncan, J., dissented and filed an opinion, in which Walters, C. J., and Nelson, J., joined.

We use the phrase "new criminal activity" as a shorthand to describe the circumstances of defendant's post-charging conspiracy to commit new crimes against the prosecutor and witnesses in the pending prosecution. We do not decide how Article I, section 11, would apply to other post-charging criminal activity.

The jury found defendant not guilty of other new charges alleging that defendant engaged in solicitation to commit murder against the witnesses and assault against the prosecutor. In addition, one of the original charges, attempted possession of a destructive device, was not submitted to the jury, and guilty verdicts for the original charges of attempted assault merged with defendant's convictions for attempted murder.

The Court of Appeals had initially affirmed defendant's convictions without opinion, but this court vacated and remanded for consideration in light of Prieto-Rubio .

The Court of Appeals concluded that the trial court's failure to suppress the evidence required reversal of defendant's convictions on the original charges of attempted aggravated murder and attempted possession of a firearm silencer. But the court affirmed defendant's convictions on the other seven original charges on the basis that there was little likelihood that the erroneously admitted evidence affected the jury's verdict. Savinskiy , 286 Or.App at 244, 399 P.3d 1075. This court declined to review the state's challenge to the Court of Appeals' rulings with respect to the original charges.

Under the circumstances of this case, we analyze the directed questioning by the informant as equivalent to questioning by the police. See State v. Smith , 310 Or. 1, 13, 791 P.2d 836 (1990) (adopting rule that Article I, section 11, applies to questioning by an informant if officers are "involved to a sufficient extent in initiating, planning, controlling or supporting [the informant's] activities").

The right to counsel in Oregon arises from two separate constitutional provisions. In addition to the Article I, section 11, guarantee of counsel to a person charged with a crime, a person who is placed in custody or other compelling circumstance has a "right to have the advice of counsel in responding to police questioning" that is "derivative or adjunct" to the Article I, section 12, right against compelled self-incrimination. State v. Turnidge , 359 Or. 364, 399, 374 P.3d 853 (2016). In this appeal, only the Article I, section 11, right to counsel is at issue.

Although the state frames its challenge to the decision of the Court of Appeals as a question of whether the evidence should be excluded, without disputing that the questioning violated defendant's right to counsel on the pending charges, the core of the state's argument is that the nature of the Article I, section 11, right to counsel requires a different result under these circumstances. Moreover, in deciding what a constitutional provision means, "this court is duty-bound to interpret the law correctly, without regard to the parties' arguments or lack thereof." State v. Vallin , 364 Or. 295, 300, 434 P.3d 413, adh'd to as modified on recons, 364 Or. 573, 437 P.3d 231 (2019).

Article I, section 11, was amended in 1932 and 1934 to include additional guarantees concerning jury verdicts in first-degree murder trials.

We explained in Prieto-Rubio that "both state and federal courts expanded their views of the 'criminal prosecution' that triggered the right to counsel, so that the constitutional guarantee applied as early as the commencement of criminal proceedings by indictment or other formal charge." 359 Or. at 24, 376 P.3d 255. In addition, however, we have recognized that a limited version of the right "can attach before indictment when a driver is arrested for DUII." State v. Swan , 363 Or. 121, 123, 420 P.3d 9 (2018) (citing State v. Spencer , 305 Or. 59, 74, 750 P.2d 147 (1988) ).

When New York's highest court later abandoned the "New York rule" that this court rejected in Sparklin, its criticism included that the prior rule, "without apparent reason, had provided 'a dispensation' for persistent offenders for it is the common criminal, not the first-time offender, who will nearly always have representation on a pending charge and thus be immunized from questioning in subsequent investigations[.]" People v. Bing , 76 N.Y.2d 331, 559 N.Y.S.2d 474, 558 N.E.2d 1011, 1017 (1990) (quoting People v. Bartolomeo , 53 N.Y.2d 225, 236-39, 440 N.Y.S.2d 894, 423 N.E.2d 371 (1981) (Wachtler, J., dissenting), overruled by People v. Bing , 76 N.Y.2d 331, 559 N.Y.S.2d 474, 558 N.E.2d 1011 (1990) ).

We emphasize that this distinction arises from the offense-specific nature of the Article I, section 11, right to counsel. Other rights guaranteed in Article I are person-specific and apply regardless of whether a crime has been charged or is being committed. See, e.g. , State v. Lien , 364 Or. 750, 441 P.3d 185 (2019) (Article I, section 9, guarantee that "the people" will be "secure *** against unreasonable search" of their "effects" protected defendants from search of garbage bin for evidence of defendant's illegal drug activity).

We reiterate that Article I, section 12, is an additional source of a right to counsel during custodial interrogation, but that right is not at issue in this case.