LAGESEN, P. J.
*773 The state has petitioned for reconsideration of our decision in State v. Craigen , 295 Or. App. 17, 432 P.3d 274 (2018). There, we reversed defendant's conviction for murder and remanded for a new trial on that charge because of our conclusion that certain out-of-court statements by defendant were obtained in violation of his right to counsel under Article I, section 11, of the Oregon Constitution and had been erroneously admitted against him at trial.[1] The state's petition seeks clarification of our disposition of three assignments of error that we did not address expressly in our opinion. Those assignments of error, which defendant raised in a supplemental brief after we decided State v. Zielinski , 287 Or. App. 770, 404 P.3d 972 (2017), challenge the trial court's exclusion of certain expert evidence regarding defendant's mental health; in defendant's view, Zielinski means that the evidence should have been admitted as relevant to his affirmative defense of extreme emotional disturbance (EED) under ORS 163.135, and that the trial court erroneously concluded otherwise.
In urging us to allow reconsideration, the state notes that our initial opinion did not address the supplemental assignments of error explicitly, that the issues raised are likely to recur on the merits, and that a written resolution of them would be helpful on remand. We agree that the requested clarification is warranted and are appreciative that the state has pointed out the need. For the reasons that follow, we conclude that defendant failed to preserve, and arguably invited, the claimed error with respect to a portion of the evidence. Regarding the balance of the evidence, we conclude, under Zielinski , that the trial court erred when it determined that evidence of defendant's depression and brain injury could not be considered in connection with defendant's EED defense, but that the court correctly excluded evidence that the symptoms of those conditions were impulsivity, emotional lability, and impaired judgment. Our ruling is without prejudice to defendant's ability to present additional evidence on remand regarding *774 the effects of those conditions on him, so long as such evidence is *1050 developed in a manner consistent with our holding in Zielinski .
Defendant's conviction for murder was for shooting his neighbor. Defendant did not deny the shooting, but sought to defend himself by raising the defenses of guilty except for insanity (GEI) and EED. In support of those defenses, defendant sought to introduce expert testimony regarding his mental health conditions. In particular, to demonstrate, as required by ORS 163.135(1),[2] that there was a "reasonable explanation" for his claimed EED given his "situation under the circumstances [as he] reasonably believed them to be," defendant sought to introduce evidence that his "situation" included "that he was depressed and he suffered from organic brain dysfunction which caused cognitive impairment. Symptoms of those mental handicaps are suicidal ideation, and inability to process emotion and loss of judgment making ability." Defendant contended that those diagnoses and symptoms were among the "factors or stressors" that the jury permissibly could take into account as part of defendant's "situation" when determining whether there was a "reasonable explanation" for the claimed EED.
The state moved in limine to exclude the evidence that defendant sought to present. The state argued that, under State v. Ott , 297 Or. 375, 686 P.2d 1001 (1984), evidence of a defendant's "personality traits" was not relevant to the EED defense and was not a factor that could be taken into account as part of defendant's "situation" in evaluating whether there was a reasonable explanation for defendant's EED. Observing that the expert's report indicated that the *775 expert might testify about "defendant's suicidal and homicidal ideations, his possible depression, and an inability to process his emotions" in connection with defendant's EED defense, the state argued that those qualities constituted personality traits for purposes of Ott , such that evidence about them was not admissible for the purposes of the EED defense.
At argument on the state's motion, defendant clarified what evidence he thought he should be permitted to introduce in support of the EED defense, and what evidence pertained solely to the GEI defense. Defendant explained that, for the EED defense, he sought to present evidence "that the brain damage just, generally speaking, has a large effect on cognitive functions, executive controls, issues such as judgment, impulsivity, [and] emotional lability." Defendant explained that such information is appropriately considered as part of a criminal defendant's "situation" in assessing whether the defendant was acting under an EED as defined by statute. Defendant also emphasized, as he already had done in his written response to the state's motion, that he did not think that evidence that he was suffering from delusions was relevant to the EED defense but, instead, pertained to the GEI defense only.
Ultimately, the trial court ruled that evidence regarding defendant's mental health conditions, including his brain injury, his depression, and the identified symptoms of those conditions, was not relevant to his EED defense as defined by the legislature: "[T]he legislature did not intend that the defendant's mental disease or defect, including depression, frontal lobe damage, Othello syndrome, other psychotic disorder, delusional disorder with paranoid features should be considered as part of the defendant's situation in evaluating the EED defense, because I find that to do so would be to-would be to negate the objective measure that's found in the second element of the jury instruction." The court concluded further that the ostensible symptoms of defendant's diagnosed conditions, *1051 "including inability to process his emotions and his impulsivity and his lability," qualified as "personality traits" under EED defense case law and, for that reason, evidence of those symptoms also was not admissible with respect to the EED defense. *776 After we held oral argument in this appeal, our court decided Zielinski . At issue in Zielinski was whether the trial court erred in excluding expert testimony that the defendant had been diagnosed with an Axis I anxiety disorder under the American Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR). In that case, as in this case, the defendant sought to introduce evidence of that diagnosis, and of the effects of the disorder on him, for purposes of showing his "situation" in connection with his EED defense. Zielinski , 287 Or. App. at 771-75, 404 P.3d 972. Specifically, the defendant sought to introduce evidence that, at the time of the crime, he was suffering symptoms of an anxiety disorder, including nightmares, that placed him at heightened risk of emotional distress. Id. at 774, 404 P.3d 972. The trial court ruled that the evidence was not admissible as part of the defendant's "situation" for purposes of the EED defense. Id . at 776, 404 P.3d 972.
We reversed. Examining ORS 163.135 and the case law construing it, we observed that, under that case law, a defendant's "personal characteristics" are appropriately considered as part of the defendant's "situation" for purposes of the EED defense, whereas a defendant's "personality characteristics" or "personality traits" are not permissibly considered as part of the defendant's "situation." Id . at 780, 404 P.3d 972 (citing Ott , 297 Or. 375, 686 P.2d 1001 ). "Personal characteristics," we explained, are things "such as gender, sexual orientation, pregnancy, or physical disability." Id . at 779, 404 P.3d 972. "Personality characteristics" are aspects of a person's personality "such as bad temperament." Id. We then determined that the defendant's Axis I anxiety disorder, as described by the evidence presented in that case, qualified as a "personal characteristic" rather than a "personality characteristic." We reasoned that some Axis I disorders, such as the defendant's anxiety disorder, are ones "that may be a focus of clinical attention," "can involve acute symptoms," and can be "susceptible to psychological and medical treatment." Id. at 781, 404 P.3d 972. For that reason, the defendant's disorder "b[ore] a closer resemblance to physical illness or disability than it [did] to nonclinical personality traits like ill temperament, dishonesty, or stubbornness." Id . at 781-82, 404 P.3d 972. Thus, the evidence was relevant and admissible evidence of the defendant's "situation" for purposes of his EED defense. Explaining the role that the evidence *777 could play in the jury's assessment of the EED defense, we stated, "Just as a jury is capable of determining reasonableness from the standpoint of an ordinary blind person, a jury is capable of determining reasonableness from the standpoint of an ordinary person suffering from an anxiety disorder, as explained through expert psychological evidence." Id. at 784, 404 P.3d 972.
In his supplemental brief on appeal, defendant contends that, in view of Zielinski , the trial court was wrong to exclude evidence about (1) defendant's Axis I mental disorders; (2) his organic brain syndrome and its effect on his executive functioning; and (3) his Othello syndrome symptoms. Defendant contends that all of those conditions are like the Axis I anxiety disorder that we concluded was relevant to the defendant's "situation" in Zielinski . The state responds, arguing, among other things, that the alleged errors identified by defendant are not wholly preserved and are, in part, invited, and that, even under Zielinski , the evidence developed by defendant below is not relevant to defendant's EED defense.
As an initial matter, we agree with the state that, to the extent that defendant challenges the trial court's exclusion of evidence beyond the evidence that defendant suffered from depression and brain damage, and that those conditions affected defendant's judgment, impulsivity, and emotional lability, the alleged errors are not preserved or, perhaps, constitute invited error. In all events, they are not reviewable. Before the trial court, defendant characterized Othello syndrome as a delusional disorder and repeatedly informed the court that defendant's *1052 delusions were relevant to the GEI defense, not to the EED defense. Under those circumstances, the court was not on notice that defendant sought to introduce evidence of his delusional disorder in support of his EED defense. For that reason, we do not review defendant's claim that the trial court erred by excluding the Othello syndrome evidence as irrelevant to the EED defense.
However, defendant's written and oral arguments did put the trial court on notice that defendant sought to introduce evidence that defendant had been diagnosed with *778 Axis I depression, defendant suffered from a brain injury, and the "symptoms" of those conditions were impaired judgment, emotional lability, and impulsivity. As noted, the trial court ruled that none of that evidence was admissible, reasoning that the diagnosed conditions were not appropriate to consider in assessing defendant's situation for purposes of the EED defense, and, further, that the identified symptoms constituted inadmissible "personality traits" under the operative case law. The question is whether those rulings were correct, in view of Zielinski .
As the state acknowledges to an extent, the trial court's determination that the evidence of defendant's diagnosis of depression and his brain injury was not relevant evidence of defendant's "situation" for purposes of the EED defense is inconsistent with our holding in Zielinski . A physical injury to the brain falls easily within the types of things we have classified as "personal characteristics" for purposes of the EED defense; there is no principled way to conclude that a "physical disability" is a "personal characteristic," as we have already concluded, but that a physical injury to the brain or other body part is not. Likewise, defendant's Axis I diagnosis of depression is relevant to defendant's "situation" for all of the same reasons that the Zielinski defendant's Axis I anxiety disorder was relevant to his situation. From what we can tell, defendant's Axis I depression disorder has many of the same hallmarks as an Axis I anxiety disorder that led us to conclude that the anxiety disorder in Zielinksi was more comparable to physical illness or disability, than it was to evidence of a personality trait.
The state observes that the discussion in our opinion in Zielinski demonstrates that the evidence offered there connected the defendant's anxiety disorder to his EED in a more concrete way than the evidence that defendant presented here does. The state argues that that lack of connection distinguishes this case from Zielinksi and demonstrates that the trial court here did not err. While we tend to agree that the evidence developed below does not make as concrete a connection between defendant's brain injury and depression and the EED defense as the evidence discussed in Zielinski did, that was not the basis for the trial court's exclusion of the evidence. Instead, the court concluded *779 categorically that evidence of defendant's brain injury and depression, among other disorders, was not relevant evidence of defendant's "situation" for purposes of the EED defense. That conclusion was wrong in view of Zielinksi . Whether there may be other reasons to exclude the evidence is something that the trial court can take up on remand. We decline to consider whether such bases exist, as defendant may opt on remand to develop different evidence about how his brain injury and depression affected his emotions at the time of the crime, in view of lessons learned from Zielinski .
The remaining question is whether the trial court erred when it excluded evidence that the "symptoms" of defendant's brain injury and depression were impaired judgment, impulsivity, and emotional lability. The state argues that those "symptoms" are, in effect, inadmissible "personality characteristics" regardless of whether they result from a disorder or injury that may appropriately be considered as part of defendant's situation. On this record, we agree. In holding that evidence of the defendant's Axis I anxiety disorder was relevant to the defendant's situation for purposes of the EED defense in Zielinksi , we did not disturb the well-entrenched rule that evidence of personality characteristics is not relevant to the EED defense. And, as our discussion in Zielinski about the evidence at issue in that case demonstrates, the defendant there did not seek *1053 to present evidence of how the disorder may have affected his personality. Zielinksi , 287 Or. App. at 773-75, 404 P.3d 972. Rather, the evidence presented addressed, in a very concrete way, how the defendant's disorder caused him to experience his emotions. Id . at 774, 404 P.3d 972 (discussing how the defendant's anxiety symptoms "placed him at heightened risk for developing extreme distress"). Here, by contrast, evidence that defendant was impulsive, lacking in judgment, and emotionally labile,[3] does not speak to defendant's concrete emotional experience at the time of the crime but, instead, is "intertwined" with his personality, notwithstanding the fact that the source of those traits may *780 be his injury or depression. See Zielinski , 287 Or. App. at 782, 404 P.3d 972 (distinguishing between evidence demonstrating how disorder affected the defendant's emotional experience at the time of the crime and evidence that is "inextricably intertwined with evidence of * * * personality"). For that reason, on this record, the trial court did not err in excluding as irrelevant to the EED defense the evidence that defendant was impulsive, judgment impaired, and emotionally labile.
In sum, the trial court erred in excluding as irrelevant the evidence that defendant had a brain injury and had been diagnosed with Axis I depression. However, it did not err in excluding the evidence that defendant's injury or his depression made him impulsive, emotionally labile, and lacking in judgment.
As previously stated, our holdings are without prejudice to defendant's ability to develop additional evidence in a manner consistent with Zielinksi .
Reconsideration allowed; former opinion modified and adhered to as modified.

We affirmed defendant's other three convictions.

ORS 163.135(1) provides:
"It is an affirmative defense to murder for purposes of ORS 163.115(1)(a) that the homicide was committed under the influence of extreme emotional disturbance if the disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act and if there is a reasonable explanation for the disturbance. The reasonableness of the explanation for the disturbance must be determined from the standpoint of an ordinary person in the actor's situation under the circumstances that the actor reasonably believed them to be. Extreme emotional disturbance does not constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."
(Emphasis added.)

The term "emotional lability" is not well-defined on this record; and it was not unreasonable for the trial court to infer that it referred to a personality characteristic on this record. We allow for the possibility that additional evidence could be developed in a way that demonstrates that emotional lability should not be treated as a personality characteristic for purposes of the EED defense.