Submitted on remand from the Oregon Supreme Court December 9, 2019; convictions on Counts 1 and 5 reversed and remanded, remanded for resentencing, otherwise affirmed May 19; petition for review allowed October 14, 2021 (368 Or 637) See later issue Oregon Reports

# STATE OF OREGON, *Plaintiff-Respondent,*

*v.*

# GEORGE WEST CRAIGEN, *Defendant-Appellant.*

## Umatilla County Circuit Court CF140169; A158112

489 P3d 1071

In *State v. Craigen*, 295 Or App 17, 432 P3d 274 (2018), the Court of Appeals reversed defendant's conviction for murder, Count 1, and remanded for a new trial on the ground that certain out-of-court statements by defendant had been obtained in violation of his Article I, section 11, of the Oregon Constitution right to counsel. In doing so, the court relied in part on its decision in *State v. Savinskiy*, 286 Or App 232, 399 P3d 1075 (2017). Then, the Oregon Supreme Court reversed *Savinskiy* and remanded this case for reconsideration in light of that reversal. *State v. Craigen*, 365 Or 721, 453 P3d 551 (2019). On remand, primarily at issue is whether officer questioning of defendant about the shooting of his neighbor violated his right to counsel under Article I, section 11, such that his statements should have been suppressed; defendant argues that the statements should be suppressed because, at the time of the questioning, defendant was represented by counsel on related, pending charges of felon in possession of a firearm. Defendant additionally assigns as plain error the trial court's acceptance of a nonunanimous jury verdict on Count 5, obliteration of identification number on a firearm. *Held*: The trial court erred in declining to suppress defendant's statements and plainly erred in accepting a nonunanimous verdict on Count 5. The Supreme Court's reversal of *Savinskiy* did not alter case law holding that a violation of the Article I, section 11, right to counsel requires the suppression of any evidence obtained as a result of the violation, including evidence of other crimes, unless the state shows that the evidence was obtained by means independent of the interrogation.

Convictions on Counts 1 and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.

On remand from the Oregon Supreme Court, *State v. Craigen*, 365 Or 721, 453 P3d 551 (2019).

Russell B. West, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the briefs for respondent.

Before Lagesen, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.

LAGESEN, P. J.

Convictions on Counts 1 and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.

**LAGESEN, P. J.**

This case is before us on remand from the Supreme Court, which vacated and remanded our previous decision for reconsideration in light of *State v. Savinskiy*, 364 Or 802, 441 P3d 557 (2019) (*Savinskiy II*). *State v. Craigen*, 365 Or 721, 453 P3d 551 (2019) (*Craigen III*). For the following reasons, we adhere to our previous decision and reverse and remand for a new trial.

The relevant facts are set forth in our two previous decisions in this matter: *State v. Craigen*, 295 Or App 17, 432 P3d 274 (2018) (*Craigen I*), and *State v. Craigen*, 296 Or App 772, 439 P3d 1048 (2019) (*Craigen II*). We set them forth here only as needed for context. In *Craigen I*, we reversed defendant's conviction for murder, Count 1, and remanded for a new trial on the ground that certain out-of-court statements by defendant had been obtained in violation of his Article I, section 11, of the Oregon Constitution right to counsel. *Craigen I*, 295 Or App at 19. In reaching that conclusion, we relied in part on our decision in *State v. Savinskiy*, 286 Or App 232, 399 P3d 1075 (2017) (*Savinskiy I*), *rev'd*, 364 Or 802, 441 P3d 557 (2019), in determining the scope of suppression warranted to remedy the Article I, section 11, violation. *Id.* In *Craigen II*, on the state's petition for reconsideration asking us to reach an issue we had not addressed initially, we concluded that the trial court erred by ruling that evidence of defendant's depression and brain injury could not be considered in connection with defendant's extreme emotional disturbance (EED) defense, but had not erred in excluding other evidence that defendant sought to introduce regarding that defense. *Craigen II*, 296 Or App at 773. Because we had previously determined that the Article I, section 11, error required reversal, we did not address whether that evidentiary error, in and of itself, was one that required reversal. *Id.* at 773-80.

The state then petitioned for Supreme Court review. As noted, after deciding *Savinskiy II*, the Supreme Court vacated our prior decisions and remanded for reconsideration in light of *Savinskiy II*. On remand, the parties have submitted supplemental briefs addressing two issues: (1) how the Supreme Court's decision in *Savinskiy II* affects the

Article I, section 11, analysis in this case; and (2) whether the evidentiary error related to the EED defense, in and of itself, presents grounds for reversal. In addition, following the decisions in *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), and *State v. Ulery*, 366 Or 500, 464 P3d 1123 (2020), defendant filed a supplemental brief requesting that we reverse his conviction on Count 5, obliteration or change of identification number on firearm, ORS 166.450, because that conviction was based on a nonunanimous verdict. We address those issues in turn.

*Article I, section 11.* At issue in this case is whether the officers' questioning of defendant about the shooting of his neighbor violated his right to counsel under Article I, section 11, when, at the time of the questioning, defendant was represented by counsel on pending charges of felon in possession of a firearm (FIP). *Craigen I*, 295 Or App at 19. Applying the standard set forth in *State v. Prieto-Rubio*, 359 Or 16, 376 P3d 255 (2016), we concluded that

> "the officers violated defendant's rights under Article I, section 11, when they continued to question defendant without notifying his lawyer once it became apparent that there was a connection between the FIP charges and the homicide, when defendant disclosed that his motive for shooting the victim was his belief that the victim had set him up on the FIP charges."

*Craigen I*, 295 Or App at 19. That is because, at that point, it was "objectively reasonably foreseeable that the questioning [would] lead to incriminating evidence concerning the offense for which the defendant [had] obtained counsel," making the continued questioning violative of Article I, section 11, under the *Prieto-Rubio* standard. *Prieto-Rubio*, 359 Or at 18; *see also Craigen I*, 295 Or App at 28-29 (applying standard). In fact, as we explained, "not only was it foreseeable at that point that further questioning might elicit incriminating information about the firearm charges, [the officer] explicitly questioned defendant about the firearms underlying those charges, eliciting incriminating information from defendant about how he came to possess those firearms," in direct violation of defendant's Article I, section 11, right to counsel on the firearm charges. *Craigen I*, 295 Or App at 28.

We concluded further that the Article I, section 11, violation requires suppression of all of defendant's statements after the violation, including statements about the yet-uncharged homicide, because the state had not demonstrated that it obtained those statements in a manner independent from the unlawful portion of the interrogation. *Id.* at 29-30. In determining the scope of suppression, we relied on our decision in *Savinskiy I*, noting that that particular issue was currently pending on review in the Supreme Court, and that, in its order allowing review, the court identified the question as, "[I]f the evidence is not admissible to prove the original crimes, is the evidence nonetheless admissible to prove the new crimes?" *Id.* at 30 & n 6.

Although the Supreme Court allowed review on the scope-of-suppression issue in *Savinskiy I*, it ultimately did not decide it. Instead, the court concluded that, under the circumstances of that case, the questioning in connection with the uncharged offenses did not violate Article I, section 11, at all, notwithstanding the fact that it otherwise violated the *Prieto-Rubio* standard. *Savinskiy II*, 364 Or at 820. As we understand the court's ruling, that was because of the ongoing nature of defendant's new criminal activity. The court explained that *Prieto-Rubio* was not dispositive because, "[i]n *Prieto-Rubio*, we were not called upon to consider whether Article I, section 11, protects a defendant from police inquiry into new criminal activity in progress, and we now conclude that the right does not extend that far." *Id.* at 807. Addressing that question, the court ultimately held that the "Article I, section 11, right to counsel on pending charges does not guarantee that the state will provide notice to a defendant's attorney before questioning the defendant about a new, uncharged and ongoing conspiracy to harm witnesses to a pending prosecution." *Id.* at 819. Having concluded that there was no violation of the Article I, section 11, right, the court did not answer the scope-of-suppression question identified in its order allowing review, although the court held that, notwithstanding the absence of an Article I, section 11, violation, "the state may not use in the prosecution of [the charges on which the defendant had counsel] incriminating statements that the police obtained through questioning without notice to the

counsel who was already defending against those charges." *Id*. at 820.

In their supplemental briefs on remand, the parties dispute whether *Savinskiy II* alters our previous analysis in this case. The state reads *Savinskiy II* broadly. It emphasizes that two factors that informed the analysis in *Savinskiy II* are present here: that defendant's new criminal conduct—homicide—was very different from the pending charges of felon in possession, and that defendant committed the new criminal conduct after the charges were pending. *See Savinskiy II*, 364 Or at 813 (discussing those factors). Further, the state notes, similar to the case in *Savinskiy II*, defendant's new criminal conduct related to the pending charges, at least in defendant's mind, because defendant's motive for shooting the victim was his belief that the victim had set the defendant up for the felon-in-possession charges. The state urges us to conclude that those similarities mean that, under *Savinskiy II*, the questioning at issue here did not violate Article I, section 11.

Defendant, in response, reads *Savinskiy II* narrowly. He notes that the court did not displace the *Prieto-Rubio* standard. Rather, pointing to the court's framing of the issue before it and its articulation of its holding, he contends that *Savinskiy II* stands only for the proposition that the Article I, section 11, right to counsel does not require officers to notify the attorney representing a person on pending criminal charges before questioning a person about an in-progress criminal scheme to disrupt the prosecution of the pending charges. He reasons that, because his own new, uncharged criminal activity was not ongoing at the time, this case remains controlled by *Prieto-Rubio*, not *Savinskiy II*.

Although the state's arguments for extending the rule of law announced in *Savinskiy II* are not without some force, we conclude, for two reasons, that *Savinskiy II* has not changed the law in a way that alters our previous conclusion.

First, in reaching its conclusion in *Savinskiy II*, the court placed a great deal of emphasis on the fact that the rule it was announcing applied to questioning about a crime

believed to be ongoing. That emphasis suggests to us that the court intended the rule it announced to apply in those limited circumstances.

Second, our holding in *Craigen I* is largely consistent with the rule announced in *Savinskiy II*. We held that the initial questioning of defendant about his new criminal conduct was not prohibited by Article I, section 11, "given many of the considerations identified by the trial court: the FIP charges were different in nature from the homicide, were separated from the homicide by a substantial amount of time, and were investigated by different officers." *Craigen I*, 295 Or App at 27. Rather, the questioning came into conflict with defendant's Article I, section 11, rights only *after* he first disclosed that he shot the victim because of his belief that the victim set him up on the FIP charges, at which point the officer questioned defendant directly about the charges on which he had counsel. *Id.* at 28. At least where, as here, a person's new criminal conduct is not ongoing, we do not understand *Savinskiy* to stand for the proposition that, in the context of an investigation of new criminal conduct, officers may, consistent with Article I, section 11, directly question a person about pending charges on which they are represented without notifying counsel. To hold that such direct questioning about pending charges is permissible in any investigation of new, unrelated criminal conduct would largely nullify the clear rule of law announced in *State v. Sparklin*, 296 Or 85, 93, 672 P2d 1182 (1983): "Once an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend." We do not understand *Savinskiy II* to operate in that way.

As noted, in *Craigen I*, we relied on *Savinskiy I* to conclude that the violation of defendant's Article I, section 11, rights with respect to the FIP charges required suppression of defendant's statements obtained after the violation in both the FIP case and this case, rejecting the state's arguments that suppression was required in the FIP case alone. Our holding in *Savinskiy I* about the scope of suppression was based on our case law holding that a violation of

the Article I, section 11, right to counsel requires the suppression of any evidence obtained as a result of the violation, including evidence of other crimes, unless the state shows that the evidence was obtained by means independent of the interrogation. *Savinskiy I*, 286 Or App at 242 (citing *State v. Beltran-Solas*, 277 Or App 665, 669, 372 P3d 577 (2016), and *State v. Hensley*, 281 Or App 523, 534, 383 P3d 333 (2016)). Given its conclusion that no Article I, section 11, violation occurred at all in that case, *Savinskiy II* did not address the scope-of-suppression issue and, for that reason, provides no grounds for departing from our prior case law on that issue, notwithstanding the reversal of our decision in *Savinskiy I*. Accordingly, we adhere to our reasoning in *Craigen I* and, for the reasons stated in our prior opinion and this one, reverse and remand defendant's conviction on Count 1.

*Evidentiary error.* Although our adherence to our prior disposition could obviate the need to address whether the evidentiary error identified in *Craigen II* is harmless, we address it to eliminate the need for a future remand in the event that the Supreme Court were to reach a different conclusion on the Article I, section 11, issue. In *Craigen II*, we held that the trial court erred in excluding some, but not all, of the expert evidence that defendant sought to introduce in support of his EED defense to the murder charge. *Craigen II*, 296 Or App at 780. Evidentiary error is harmless if there is "little likelihood" that the error affected the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Defendant's offer of proof regarding the excluded expert evidence focused mostly on the evidence that we concluded was properly excluded rather than on the evidence that we concluded was excluded in error, and did not address in any clear way what testimony defendant would present on the permissible topics. As a result, the record is inadequate to permit us to assess harm, which means that defendant has not demonstrated that the trial court's error in excluding the evidence is, in and of itself, grounds for reversal. *See State v. Krieger*, 291 Or App 450, 456-57, 422 P3d 300, *rev den*, 363 Or 599 (2018) (party claiming evidentiary error must develop record sufficient to evaluate whether any error is harmless). Although we have concluded that the error would not be grounds for reversal in and of itself, as we stated in

*Craigen II*, "our holdings are without prejudice to defendant's ability to develop additional evidence" on remand in a manner that comports with *State v. Zielinski*, 287 Or App 770, 404 P3d 972 (2017). *Craigen II*, 296 Or App at 780.

*Nonunanimous verdict.* As noted, the verdict on Count 5 was not unanimous. For the reasons explained in *Ulery*, it was plain error to accept the verdict, and, for the reasons also stated in *Ulery*, we exercise our discretion to correct that error by reversing the conviction on Count 5. *Ulery*, 366 Or at 504-05.

Convictions on Counts 1 and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.