Argued and submitted March 3, 2022; decision of Court of Appeals affirmed; judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings January 19, 2023

STATE OF OREGON,
*Petitioner on Review,*

*v.*

GEORGE WEST CRAIGEN,
*Respondent on Review.*

(CC CF140169) (CA A158112) (SC S068736)

524 P3d 85

Defendant moved to suppress evidence obtained as a result of police questioning on the ground that the questioning violated his right to counsel under Article I, section 11, of the Oregon Constitution because, although the questioning occurred during an interrogation about a crime that he had not yet been charged with, it concerned other crimes that he had already been charged with and on which he was represented by counsel. *Held*: Police questioning about crimes on which defendant had been charged and was represented by counsel violated defendant's Article I, section 11, right to counsel and evidence obtained as a result of that violation had to be suppressed.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Michael A. Casper, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

David O. Ferry, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Claire Powers, Oregon Justice Resource Center, Portland, filed the brief for *amicus curiae* Oregon Justice Resource Center. Also on the brief was Malori Maloney.

_____

* Appeal from Umatilla County Circuit Court, Russell B. West, Judge. 311 Or App 478, 489 P3d 1071 (2021).

Before Flynn, Chief Justice, and Duncan, Nelson, and DeHoog, Justices, and Kistler and Walters, Senior Judges, Justices pro tempore.**

DUNCAN, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

_____

** Balmer, J., retired December 31, 2022, and did not participate in the decision of this case. Garrett, Bushong, and James, JJ., did not participate in the consideration or decision of this case.

**DUNCAN, J.**

While interrogating defendant about the murder at issue in this case, which defendant had not yet been charged with, detectives asked defendant about firearms crimes, which defendant had already been charged with in other cases and on which he was represented by counsel. After the state brought this murder case against defendant, defendant filed a motion to suppress evidence obtained as a result of the interrogation, including, as relevant on review, evidence obtained as a result of the questioning about the firearms cases. Defendant argued that that questioning violated his right to counsel under Article I, section 11, of the Oregon Constitution and that all evidence resulting from the violation had to be suppressed. The trial court denied the motion. Defendant appealed, renewing the argument that he had made in the trial court. The Court of Appeals agreed with defendant. For the reasons explained below, so do we.

## I.   HISTORICAL AND PROCEDURAL FACTS

The relevant facts are few. In 2011, defendant was facing four charges of felon in possession of a firearm (FIP). Defendant had retained counsel, Gushwa, to represent him on those charges. Gushwa had sent the district attorney a notice stating, "Please instruct all police officers and personnel of your office not to speak to the defendant without first obtaining written permission from me."

On December 30, 2011, when he was scheduled to appear for a status conference on the FIP charges, defendant shot and killed his neighbor, Carter. Two days later, detectives investigating the shooting interrogated defendant. The detectives did not notify Gushwa about the interrogation. They believed that Gushwa no longer represented defendant on the FIP charges, but that belief was mistaken. Gushwa was still defendant's counsel of record on those charges. Although Gushwa would later file a motion to withdraw, he had not done so at the time of the interrogation.

Early in the interrogation, the detectives asked defendant why he had shot Carter, and defendant told them that he believed that Carter and his family had set him up

on the FIP charges. One of the detectives then asked defendant directly about the FIP charges, including how defendant had come into possession of the firearms on which the FIP charges were based.

The detectives continued to ask defendant about his motive for shooting Carter and, at several points during the interrogation, defendant reiterated his belief that Carter had set him up on the FIP charges to ensure that defendant would serve a long prison sentence.

After the interrogation, the state brought this case against defendant based on the shooting incident, charging defendant with several crimes, including murder, which is the only charge at issue on review.[1] This murder case is separate from the FIP cases.

Prior to trial in this case, defendant filed a motion to suppress evidence resulting from the interrogation. As relevant on review, defendant moved to suppress evidence obtained as a result of the questions that the detectives had asked after defendant told them that he had shot Carter because he believed that Carter had set him up on the FIP charges, including evidence obtained as a result of the questions that detectives had asked about the FIP charges, specifically, how he had come into possession of the firearms that he was charged with possessing. Defendant argued that those questions violated his right to counsel under Article I, section 11, of the Oregon Constitution. The trial court denied the motion.

The case proceeded to a jury trial. Defendant did not dispute that he had shot and killed Carter. Instead, he raised two defenses relating to his mental condition, one based on insanity and the other based on an extreme emotional disturbance.[2] To support the defenses, defense

_____

[1] In addition to charging defendant with murder, ORS 163.115, the state charged defendant with manslaughter, ORS 163.118; FIP, ORS 166.270; unlawful use of a weapon, ORS 166.220; obliteration or change of identification number on a firearm, ORS 166.450; and three counts of reckless endangering, ORS 163.195.

[2] ORS 161.295 provides that a person is guilty except for insanity if, "as a result of a qualifying mental disorder at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law." ORS 163.135

counsel presented evidence that defendant had brain dam-age and a history of delusional thinking, including delusions about Carter. Although Carter had been defendant's friend, defendant had come to believe that Carter had caused defen-dant's wife to leave him, had plotted to have him put in jail, and intended to acquire his property. The state disputed defendant's claims about his mental condition. It played a video recording of the detectives' interrogation of defendant, which it used to argue that the shooting was not the product of insanity or an extreme emotional disturbance.

The jury rejected defendant's defenses and found him guilty of murder and other charges.[3] On the murder count, the trial court sentenced defendant to life with the possibility of parole after 25 years.

Defendant appealed, and the Court of Appeals held that the trial court had erred in denying defendant's motion to suppress. *State v. Craigen*, 295 Or App 17, 19, 432 P3d 274 (2018) (*Craigen I*). The court first stated that, under *State v. Prieto-Rubio*, 359 Or 16, 376 P3d 255 (2016), "'the appropri-ate test for determining the permissible scope of question-ing of a criminal defendant who is represented by counsel is whether it is objectively reasonably foreseeable that the questioning will lead to incriminating evidence concerning the offense for which the defendant has obtained counsel.'" *Craigen I*, 295 Or App at 26 (quoting *Prieto-Rubio*, 359 Or at 18 (alteration omitted)). Applying that test, the court con-cluded that, "after defendant disclosed his belief that the victim had set him up on the 2011 firearm charges, the officers' continued questioning violated defendant's rights under Article I, section 11." *Id.* at 27. The court explained:

"Once defendant disclosed to detectives that there was a connection between the 2011 firearm charges and his

_____

provides that an extreme emotional disturbance is an affirmative defense to mur-der in the second degree when (1) the homicide is committed under the influence of extreme emotional disturbance, (2) the disturbance is not the result of the person's own culpable conduct, and (3) there is a reasonable explanation for the disturbance.

[3] In addition to murder, the jury found defendant guilty of a new FIP charge, as well as charges of unlawful use of a weapon and obliteration or change of identification number on a firearm, all related to the shooting of Carter. The trial court dismissed manslaughter and reckless endangering counts.

animosity toward the victim and his family, it became reasonably foreseeable, as an objective matter, that further questioning would elicit incriminating information about the FIP charges, on which defendant was represented. Indeed, not only was it foreseeable at that point that further questioning might elicit incriminating information about the firearm charges, [one of the detectives] explicitly questioned defendant about the firearms underlying those charges, eliciting incriminating information from defendant about how he came to possess those firearms. That questioning was in direct violation of defendant's right to counsel on those charges."

*Id.* at 28 (citing *State v. Beltran-Solas*, 277 Or App 665, 670, 372 P3d 577 (2016) (noting state's concession that an officer violated the defendant's right to counsel when, during an interrogation about uncharged crimes, the officer asked the defendant about charged crimes on which the defendant had counsel) (footnote omitted)).

After concluding that the detectives' questioning about the FIP charges violated defendant's right to counsel on those charges, the Court of Appeals considered whether evidence resulting from that questioning had to be suppressed. *Craigen I*, 295 Or App at 29. The court explained that, under its case law, "'[i]f a defendant is interrogated in violation of his right to counsel under Article I, section 11, any evidence discovered as result—including evidence of other crimes—must be suppressed unless the state demonstrates that the evidence was not the product of the constitutional violation.'" *Id.* (quoting *State v. Hensley*, 281 Or App 523, 534, 383 P3d 333 (2016), and citing *State v. Savinskiy*, 286 Or App 232, 242-43, 399 P3d 1075 (2017) (*Savinskiy I*)). The court then noted that the state had not contended that it had made that showing. *Craigen I*, 295 Or App at 29. Instead, the state had argued, among other things, that,

"regardless of any violation of defendant's Article I, section 11, rights with respect to the FIP charges, suppression of defendant's statements is not required in *this* [murder] case because, at the time that defendant was questioned, his Article I, section 11, rights had not yet attached with respect to this case."

*Id.* at 30 (emphasis in original). The court rejected that argument, explaining that it had rejected an identical argument in *Savinskiy I. Id.* Consequently, the court concluded that the trial court had erred in denying defendant's motion to suppress. *Id.*[4]

Finally, the Court of Appeals considered whether the trial court's erroneous denial of defendant's motion to suppress was harmless. *Id.* at 30-31. The court noted that defendant's mental condition at the time of the shooting was the central issue in the case and concluded that defendant's statements during the interrogation, "on which the state relied in urging the jury to reject defendant's *** defenses, likely played some role in the jury's rejection of those defenses" as to the murder charge. *Id.* at 30. Therefore, the court reversed and remanded defendant's conviction for murder, remanded the case for resentencing, and otherwise affirmed the trial court's judgment. *Id.* at 31.[5]

---

[4] In addition to arguing that suppression was not required because defendant's right to counsel had not attached to the murder charge at the time of the questioning, the state argued that suppression was not required because the detectives believed that Gushwa had withdrawn from the FIP cases. The court rejected that argument on the ground that, "once a defendant has retained an attorney, a person cannot validly waive his Article I, section 11 right to an attorney without having an opportunity to consult with his attorney." *Craigen I*, 295 Or App at 29 (internal quotation marks omitted).

On review, the state acknowledges that the detectives' belief that Gushwa no longer represented defendant was "not accurate" and that their belief "did not alter the fact that defendant's right to counsel had attached in the FIP case."

[5] After the Court of Appeals issued *Craigen I*, the state petitioned for reconsideration, asking the court to clarify its disposition regarding three assignments of error that it had not expressly addressed in its decision. Defendant had raised the assignments in a supplemental brief after the decision in *State v. Zielinski*, 287 Or App 770, 404 P3d 972 (2017), which concerned the admissibility of evidence of "personal characteristics" offered in support of an extreme emotional disturbance defense. The assignments challenged the trial court's exclusion of evidence that defendant had proffered regarding his mental condition at the time of the shooting, and the state asserted that the evidentiary issues raised by the assignments were likely to arise on remand.

The Court of Appeals allowed the state's petition for reconsideration and held that the trial court had erred in ruling that one category of defendant's proffered evidence was irrelevant, but that it had not erred ruling that another category was irrelevant. *State v. Craigen*, 296 Or App 772, 773, 778-80, 439 P3d 1048 (2019) (*Craigen II*). The court recognized both that the record regarding the relevance of the evidence could develop differently on remand and that there could be other bases for excluding the evidence. *Id.* at 779-80. Therefore, the court stated that its holdings were without prejudice to further development of the record on remand in light of *Zielinski*. *Id.* at 780.

The state petitioned for review. At the time, the Court of Appeals decision in *Savinskiy I*, which also involved an investigation into uncharged crimes when the defendant was represented by counsel on charged crimes, was on review. We subsequently issued our decision in that case, *State v. Savinskiy*, 364 Or 802, 441 P3d 557, *adh'd to as modified on recons*, 365 Or 463, 445 P3d 307 (2019) (*Savinskiy II*), in which we held that the questioning there did not violate the defendant's right to counsel because it concerned a "new, uncharged and ongoing conspiracy to illegally undermine the pending charges." *Id.* at 807. Thereafter, we allowed review in this case, vacated the Court of Appeals' decision, and remanded the case to the Court of Appeals for reconsideration in light of *Savinskiy II*. *State v. Craigen*, 365 Or 721, 453 P3d 551 (2019) (*Craigen III*).

On remand, the Court of Appeals first considered whether, under *Savinskiy II*, the questioning in this case violated defendant's right to counsel. *State v. Craigen*, 311 Or App 478, 483, 489 P3d 1071 (2021) (*Craigen IV*). For two reasons, the court concluded that *Savinskiy II* did not change the law in a way that affected its prior holding. *Id.* at 483-84. First, the court explained that, in *Savinskiy II*, this court "placed a great deal of emphasis on the fact that the rule it was announcing applied to questioning about a crime believed to be ongoing," and that emphasis indicated that this court "intended the rule *** to apply in those limited circumstances." *Id.* Second, the court pointed out that allowing the type of questioning at issue in this case

> "would largely nullify the clear rule of law announced in *State v. Sparklin*, 296 Or 85, 93, 672 P2d 1182 (1983): 'Once an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend.'"

*Id.* at 484. Therefore, the court adhered to its holding that the detectives had violated defendant's right to counsel when they continued to question him, without notifying his counsel, after it was reasonably foreseeable that doing so would lead to incriminating evidence on the FIP charges. *Id.* at 484-85; *see Craigen I*, 295 Or App at 19 (so holding).

The Court of Appeals also adhered to its holding that the trial court had erred in failing to suppress the evidence resulting from the violation of defendant's right to counsel. *Craigen IV*, 311 Or App at 484-85. The court explained that *Savinskiy II* did not affect that holding, because, in *Savinskiy II*, this court had held that the questioning at issue did not violate the defendant's right to counsel and, therefore, this court had not addressed whether evidence resulting from a violation of a defendant's right to counsel must be suppressed. *Id.* at 485.

Finally, the Court of Appeals adhered to its holding that the error was harmful as to defendant's murder conviction. *Id.* Therefore, the court again reversed that conviction and remanded the case for resentencing. *Id.*[6]

## II.   ANALYSIS

### A.   *Relevant Law*

Article I, section 11, of the Oregon Constitution provides, "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]" The right to counsel is essential in our adversarial system of criminal law. Criminal prosecutions can carry great consequences, and criminal proceedings can be complex. The state utilizes trained professionals to represent its interests in prosecutions, and Article I, section 11, guarantees defendants the right to do the same.[7] *Sparklin*, 296 Or at 93 ("The constitutional right to counsel is meant to counteract the

---

[6] On remand from this court to the Court of Appeals, the parties filed supplemental briefs regarding whether the trial court's erroneous exclusion of evidence of defendant's "personal characteristics," in and of itself, presented a basis for reversal. In addition, after the decisions in *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), and *State v. Ulery*, 366 Or 500, 464 P3d 1123 (2020), defendant filed a supplemental brief seeking reversal of his conviction on Count 5, obliteration or change of identification number on a firearm, on the ground that it was based on a nonunanimous jury verdict. On the first issue, the Court of Appeals held that defendant had failed to establish that the trial court's evidentiary error was harmful. *Craigen IV*, 311 Or App at 485. But the court stated, as it had in *Craigen II*, 296 Or App at 780, that its holding did not preclude further development of the record on remand. *Craigen IV*, 311 Or App at 485-86. On the second issue, the court held that it was plain error for the trial court to accept the jury's nonunanimous verdict on Count 5. *Id.* at 486. Consequently, the court reversed that count as well. *Id.*

[7] As the United States Supreme Court explained regarding the right to counsel under the Sixth Amendment of the United States Constitution:

handicaps of a suspect enmeshed in the machinery of criminal process." (Internal quotation marks omitted.)).

The Article I, section 11, right to counsel is an individual right. The right exists so that, when the state exercises its prosecutorial powers against a person, the person can call on counsel to assert and protect the person's rights. As such, it is a particularly important right, one through which other rights are given effect, including the state constitutional rights to be free from unreasonable searches and seizures and compelled self-incrimination, Or Const, Art I, §§ 9, 12, as well as the rights to be tried by an impartial jury, to meet witnesses face to face, and to have compulsory process for obtaining witnesses, Or Const, Art I, § 11.

Although the Article I, section 11, right to counsel is an individual right, it benefits the criminal legal system and the public in general. The state constitutional rights of individuals, including the right to counsel, help ensure that the state abides by the legal limits on its authority, that criminal proceedings are fair, and that verdicts are reliable. Thus, although they are individual rights, they help preserve the rule of law and the integrity of the legal system.

The Article I, section 11, right to counsel was "originally understood to apply only to the conduct of criminal trials." *Prieto-Rubio*, 359 Or at 24. That was because trial was where "the primary confrontation between state and individual occurred." *Sparklin*, 296 Or at 92 n 9. But over time the nature of law enforcement and criminal prosecutions changed and the point at which an individual first confronted "the amassed power of the state *** moved back

---

"[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries."

*Gideon v. Wainwright*, 372 US 335, 344, 83 S Ct 792, 9 L Ed 2d 799 (1963).

in the process from trial to the police stage." *Id.* (internal quotation marks omitted). The change "'tended to generate pretrial events that might appropriately be considered to be parts of the trial itself.'" *Prieto-Rubio*, 359 Or at 24 (quoting *United States v. Ash*, 413 US 300, 310, 93 S Ct 2568, 37 L Ed 2d 619 (1973)). In light of the change, this court has ruled that the Article I, section 11, right to counsel applies "to those stages of a criminal proceeding 'when [a defendant] must take steps or make a choice which is likely to have a substantial effect on the prosecution against him.'" *Prieto-Rubio*, 359 Or at 25 (quoting *State v. Miller*, 254 Or 244, 249, 458 P2d 1017 (1969) (alteration in *Prieto-Rubio*)).

Regarding the investigative stage of a criminal proceeding, this court has recognized that "the right to an attorney during the investigative stage is at least as important as the right to counsel during the trial itself." *Sparklin*, 296 Or at 92 n 9. In keeping with that recognition, this court has ruled that a defendant has the right to have counsel present at certain pretrial events. *Id.* at 93-94. As this court has explained, pretrial events like interrogations, line-ups, polygraph sessions, and psychiatric examinations "are investigative tools by means of which the state builds its case" against a defendant, and, in order to preserve counsel's effectiveness and the fairness of trial, the defendant has a right to have counsel present at those events. *Id.* at 94; *Savinskiy II*, 364 Or at 820 (to protect a defendant's right to counsel, courts must recognize that evidence obtained in pretrial confrontations between the state and the defendant, outside the presence of defense counsel, can undermine counsel's effectiveness and the fairness of trial); *see also State v. Gray*, 370 Or 116, 132, 515 P3d 348 (2022) (holding that, under Article I, section 11, a defendant has a right to have counsel present when he testifies before a grand jury because the opportunities for prejudice are "manifest" in that the defendant "might waive an evidentiary privilege by failing to claim it, or he might make statements against interest, or he might present testimony in a way that contradicts (or seemingly contradicts) any later testimony at trial").

As to interrogations, in *Sparklin*, this court ruled, "Once an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events

surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend." 296 Or at 93. As this court explained,

> "[i]n the smallest civil matter an attorney and his or her investigator are restricted in their contact with a represented party. We can certainly require no less of prosecutors or police in criminal matters. A defendant may, of course, volunteer statements, but this must be on his own initiative and not in response to questioning."

*Id.* (footnote omitted).

The Article I, section 11, restriction on the interrogation of a represented defendant protects the defendant's relationship with counsel. "To permit officers to question a represented suspect in the absence of counsel encourages them to undermine the suspect's decision to rely upon counsel. Such interrogation subverts the attorney-client relationship." *Sparklin*, 296 Or at 93 (internal quotation marks omitted). It conveys to the defendant that counsel will not be made available, and that message can cause a defendant to believe either that he does not have the right to have his counsel present or that the officers will not honor his rights. In turn, those beliefs can cause the defendant not to assert his rights.

The Article I, section 11, right to have counsel present at an interrogation applies regardless of whether the defendant asks for counsel to be present. *Sparklin*, 296 Or at 93. That is so because, once a person is charged with a crime, the person "is entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant." *Id.* at 93; *see also Prieto-Rubio*, 359 Or at 27 (quoting *Sparklin*, 296 Or at 93); *Savinskiy II*, 364 Or at 818 (same). Moreover, once a defendant has counsel, the defendant cannot waive his Article I, section 11, right to counsel without first having an opportunity to consult with counsel. *Sparklin*, 296 Or at 94.

Not only does the Article I, section 11, right include the right to have counsel present during interrogations about

*charged* crimes, it also includes the right to have counsel present for interrogations about certain *uncharged* crimes. This court has explained the limit that Article I, section 11, imposes on questioning about uncharged crimes in three cases: *Sparklin*, *Prieto-Rubio*, and *Savinskiy II*. Because the state, which is the petitioner on review, has focused on the law regarding police questioning of represented defendants about uncharged crimes, we pause to briefly describe our case law on that issue.

As relevant here, in *Sparklin* this court indicated that police questioning of represented defendants about uncharged crimes violates a defendant's Article I, section 11, right to counsel when the uncharged crimes are related to the charged crimes. 296 Or at 87, 98 (stating, in *dicta*, that, because the defendant had been arraigned on, and was represented on, a forgery charge based on the use of a stolen credit card, police questioning about the uncharged assault and robbery during which the credit card had been stolen was improper, even though the charged forgery and uncharged assault and robbery occurred at different times and in different jurisdictions and were being investigated by different law enforcement agencies).

Later, in *Prieto-Rubio*, this court directly addressed the scope of the Article I, section 11, right to counsel during police questioning about uncharged crimes. 359 Or at 18, 36-38. This court focused on the purpose of the right, which, it reiterated, "is to ensure that a defendant charged with a crime has the benefit of an attorney's presence, advice, and expertise 'in any situation where the state *may* glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant.'" *Id.* at 36 (quoting *Sparklin*, 296 Or at 93 (emphasis in *Prieto-Rubio*)). Based on that purpose, this court established an objective, principled rule for determining when a defendant's Article I, section 11, right to counsel on charged crimes includes the right to have counsel present for questioning about uncharged crimes, stating:

"[T]he appropriate test for determining the permissible scope of questioning of a criminal defendant who is represented by counsel is whether it is objectively reasonably

foreseeable that the questioning will lead to incriminating evidence concerning the offense for which the defendant has obtained counsel."

*Prieto-Rubio*, 359 Or at 18; *id*. at 36 (same). Without such a rule, this court concluded, "the state constitutional guarantee of the right to counsel would be circumvented." *Id*.

Then, in *Savinskiy II*, this court created a narrow exception to the *Prieto-Rubio* rule. 364 Or at 819. There, based on the specific facts of the case, this court held that, although it was reasonably foreseeable that police questioning about uncharged crimes—which included conspiracies to harm persons involved in the prosecution of the defendant's charged crimes—would lead to incriminating evidence of the defendant's charged crimes, the questioning did not violate the defendant's Article I, section 11, right to counsel because that right "does not guarantee that the state will provide notice to a defendant's attorney before questioning the defendant about a new, uncharged and ongoing conspiracy to harm witnesses to a pending prosecution." *Id*.[8]

B.   *Application*

In this case, the state frames the issue as whether the detectives' questioning of defendant about *uncharged* crimes violated defendant's right to counsel. It asserts that the issue is "whether Article I, section 11, precluded the

---

[8] In *Savinskiy II*, this court stated that the issue before it was whether the questioning about "new criminal activity" violated Savinskiy's rights, 364 Or at 804, and it explained that it was using the phrase "'new criminal activity' as a shorthand to describe the circumstances of defendant's post-charging conspiracy to commit new crimes against the prosecutor and witnesses in the pending prosecution." *Id*. at 804 n 1. This court restated that framing clearly and repeatedly throughout the opinion. *E.g.*, *id*. at 806-07 ("[T]he question we ultimately must answer is whether Article I, section 11, guarantees a right to counsel during police *questioning about the kind of new, uncharged criminal activity in which defendant was engaged*." (Emphasis added.)); *id*. at 811 ("The issue in dispute is whether *defendant's new criminal activity* is the kind of uncharged criminal activity that falls beyond the boundary of Article I, section 11, protection." (Emphasis added.)); *id*. at 812 (noting that, by contrast, the uncharged crimes in *Prieto-Rubio* "were completed before the time that the state indicted the defendant" for the charged crimes); *id*. at 817 (referring to "investigative techniques that capture *a new crime in progress*" (internal quotation marks omitted; emphasis added)); *id*. at 807 (stating its conclusion that "police were not required to provide notice to the attorney representing defendant on the pending charges before inquiring about his *new, uncharged and ongoing conspiracy to illegally undermine the pending charges*" (emphasis added)).

police in this case from questioning defendant about the murder that was just committed because he was already under indictment for a felon-in-possession offense." The state asks us to rule that police may question a represented defendant about uncharged crimes as long as (1) the uncharged crimes occurred after the charged crimes and (2) the uncharged crimes are fundamentally different from the charged crimes. In response, defendant and *amicus curiae* argue that the state's rule is inconsistent with the right to counsel because it would deny a defendant the right to the presence, advice, and expertise of counsel in confrontations with the state where it is reasonably foreseeable that the state "may glean involuntary and incriminating evidence or statements" about charged crimes. *Sparklin*, 296 Or at 93; *see also Prieto-Rubio*, 359 Or at 36 (quoting *Sparklin*, 296 Or at 93); *Savinskiy II*, 364 Or at 818 (same). They point out that questioning about uncharged crimes can lead to incriminating statements about charged crimes, even if the uncharged crimes occurred after, and are different from, the charged crimes.

          We reject the state's framing of the issue, which focuses on whether the detectives could question defendant about uncharged crimes, specifically, the murder. We do so because the detectives questioned defendant about charged crimes, specifically the FIPs. As recounted above, after the detectives asked defendant why he had shot Carter, defendant said that he believed that Carter had set him up on the FIP charges. After that statement, one of the detectives immediately asked defendant about the FIP charges, specifically, how defendant had come into possession of the firearms he was charged with possessing. That question was about charged crimes on which defendant was represented by counsel. As such, it violated the *Sparklin* rule that, "[o]nce an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend." 296 Or at 93. And, as the Court of Appeals recognized in its decision in this case, nothing in *Savinskiy II* altered that rule. *Craigen IV*, 311 Or App at 484. Nor could it have. The rule is a core component of the

right to counsel. *Sparklin*, 296 Or at 93 ("Once accused has sought the safeguard of counsel, it is unfair to let skilled interrogators lure him from behind the shield into an unequal encounter." (Internal quotation marks and citation omitted.)).[9]

Because the detectives violated defendant's right to counsel by questioning him about the FIP charges on which he was represented, the question becomes whether the resulting evidence had to be suppressed. Under Oregon constitutional law, when the state violates an individual's constitutional right, the state cannot use evidence obtained as a result of that violation. *State v. Jones*, 248 Or 428, 431, 435 P2d 317 (1967) ("If evidence is obtained as the fruit of illegal police conduct, it may not be used in state courts."). "This proscription covers testimonial evidence as well as physical evidence." *Id.* at 432. The evidence must be suppressed in order to vindicate the individual's personal rights. *State v. Davis*, 313 Or 246, 253-54, 834 P2d 1008 (1992) (so explaining regarding violations of Article I, section 9). Suppression is required "'to preserve *** rights to the same extent as if the government's officers had stayed within the law.'" *Id.* at 253 (quoting *State v. Davis*, 295 Or 227, 234, 666 P2d 802 (1983) (alteration in original)). In other words, the parties must be restored "to their positions as if the state's officers had remained within the limits of their authority." *Davis*, 295 Or at 237; *see also State v. Simonsen*, 319 Or 510, 518-19, 878 P2d 409 (1994) (adopting rationale of *Davis*, 313 Or at 253-54, and requiring suppression of evidence resulting from violations of Article I, section 12). Accordingly, this court has held that "[t]he remedy for a violation of Article I, section 11, is the exclusion of any prejudicial evidence obtained as a result of that violation." *Prieto-Rubio*, 359 Or at 38; *State v. Spencer*, 305 Or 59, 74-76, 750 P2d 147 (1988) (ruling that, under Article I, section 11, a person arrested for driving under the influence of intoxicants has the right, upon request, to a reasonable opportunity

---

[9] Because the detectives asked defendant about charged crimes on which he was represented by counsel, we need not address the state's argument that we should alter the law regarding the Article I, section 11, limits on police questioning of a represented defendant about uncharged crimes. Accordingly, we adhere to law set out in *Sparklin*, *Prieto-Rubio*, and *Savinskiy II*.

to consult with counsel before deciding whether to submit to a breath test and that a violation of that right requires suppression of the breath-test result); *State v. Dinsmore*, 342 Or 1, 10, 147 P3d 1146 (2006) (following *Spencer* and holding that a breath-test result obtained as a result of a violation of Article I, section 11, was "inadmissible for all purposes").

If officers violate a defendant's state constitutional rights and the defendant establishes a minimal factual nexus between the violation and the subsequent discovery of evidence, the evidence must be suppressed unless the state shows that the evidence did not result from that violation. *State v. Thompson*, 370 Or 273, 289, 518 P3d 923 (2022). The state can do so by showing one of three things: that the evidence was discovered through an independent source, that the evidence would have been inevitably discovered, or that the discovery of the evidence was so attenuated from the violation as to dissipate the taint of the unlawful conduct. *Id.* at 291.

In this case, the state does not contend that it has made such a showing. Therefore, like the Court of Appeals, we conclude that the trial court erred in denying defendant's motion to suppress.

In arguing against that conclusion, the state does not directly address whether the detectives' questioning about the charged FIPs requires suppression of the evidence at issue. Instead, the state makes an argument based on the premise that the questioning at issue was about the uncharged murder. It argues that the detectives did not violate defendant's right to counsel when questioning him about the uncharged murder because defendant's right to counsel had not yet attached to that crime. The state's focus on whether defendant's right to counsel had attached to the uncharged murder is misdirected. It is undisputed that defendant's right to counsel had attached to the FIP charges when the detectives questioned him about those charges in contravention of the *Sparklin* rule. That questioning violated defendant's right to counsel on the FIP charges, and that violation requires suppression of the evidence that the state obtained as a result.

The state seems to suggest that, even though the detectives violated defendant's right to counsel on the FIP charges, the state can use evidence resulting from that violation in its prosecution of the murder charge. But that is inconsistent with Oregon's exclusionary rule, under which parties are to be restored "to their positions as if the state's officers had remained within the limits of their authority." *Davis*, 295 Or at 237; *see also Dinsmore*, 342 Or at 10 (evidence resulting from a violation of Article I, section 11, is "inadmissible for all purposes"). The state cannot benefit from a violation of a defendant's constitutional rights. Therefore, evidence resulting from the violation of defendant's right to counsel on the charged FIPs—including evidence of the uncharged murder—had to be suppressed. The trial court erred in ruling otherwise.

Because the trial court failed to suppress the evidence, and because the admission of the evidence was prejudicial as to defendant's murder conviction, reversal of that conviction is required.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.